### LYLE MUNROE ET AL. *v.* GREAT AMERICAN INSURANCE COMPANY ET AL.
### (14969)

PETERS, C. J., and BORDEN, BERDON, NORCOTT and PALMER, Js.

Argued March 14—decision released July 11, 1995

*Jessica L. Papazian-Ross*, for the appellants (defendants).

*Michael T. Sullivan*, with whom were *Jacques J. Parenteau* and, on the brief, *Keith B. Kyle*, for the appellees (plaintiffs).

PETERS, C. J. The sole issue in this certified case from the United States District Court for the District of Rhode Island is whether, under the circumstances of this case, an insurance company that has issued a binder for liability insurance coverage in reliance on intentional and material misrepresentations by the insurance applicant can rescind the insurance contract ab initio so as to avoid liability to innocent third parties. The plaintiffs, Lyle Munroe and Shirley Munroe, brought

a diversity action in the District Court, pursuant to Rhode Island General Laws §§ 27-7-1 and 27-7-2,[1] to recover damages for personal injuries that they had suffered in a collision between their car and that of Ronald R. Menard. They alleged that Menard, at the time of the accident, was insured under an insurance binder issued by the defendant, Great American Insurance Company. The defendant filed an answer and a counterclaim, in which it alleged that it had no liability to the plaintiffs because it had revoked and rescinded Menard's insurance upon discovering intentional and material misrepresentations in Menard's insurance application. Concluding that Connecticut law governed the validity of the defendant's counterclaim, the Dis-

---

[1] Rhode Island General Laws § 27-7-1 (1989 reenactment) provided: "PROVISION FOR DIRECT LIABILITY OF INSURER TO PERSON INJURED. ——Every policy hereafter written insuring against liability for property damage or personal injuries or both, and every policy hereinafter written indemnifying any person by reason of that liability, other than the payment of compensation under chapters 29 to 38, inclusive, of title 28, shall contain provisions to the effect that the insurer shall be directly liable to the injured party and, in the event of that party's death, to the party entitled to sue therefor, to pay that party the amount of damages for which the insured is liable."

Rhode Island General Laws § 27-7-2 provides: "REMEDIES OF INJURED PARTY AGAINST INSURER. ——An injured party, or, in the event of that party's death, the party entitled to sue therefor, in his or her suit against the insured, shall not join the insurer as a defendant. If, however, the officer serving any process against the insured shall return that process 'non est inventus', or where before suit has been brought and probate proceedings have not been initiated the insured has died, or where suit is pending against an insured in his own name and the insured died prior to judgment, or where a nonresident had been involved in an automobile accident in Rhode Island as an operator or owner and died before suit has been brought, the injured party, and, in the event of that party's death, the party entitled to sue therefor, may proceed directly against the insurer. The injured party, or, in the event of that party's death, the party entitled to sue therefor, after having obtained judgment against the insured alone, may proceed on that judgment in a separate action against the insurer; provided, however, the payment in whole or in part of the liability by either the insured or the insurer shall, to the extent thereof, be a bar to recovery against the other of the amount so paid."

trict Court certified the following question to us,[2] which we agreed to answer: "Whether intentional material misrepresentations on an application for insurance give the insurance company the right to rescind the insurance contract with the effect that it is void ab initio?" We are persuaded that the answer to the question is: No, under the circumstances of this case.

The record provided by the District Court establishes the following facts. Menard purchased his car in Connecticut on February 8, 1990. In order to register the car, he needed proof of liability insurance. He knew that his motor vehicle operator license had been suspended because of his failure to pay fines arising out of his convictions, in 1988 and 1989, of reckless driving and speeding.

In order to obtain liability insurance, Menard contacted an agent at Guardian Group-Gerardi Associates, Inc. (Guardian), an authorized Connecticut agency for the defendant, to whom he intentionally made representations that were false and that were material to his eligibility for insurance coverage. Over the telephone, Menard advised the agent that he was married, that he was living at a designated address in Putnam and

---

[2] General Statutes § 51-199a provides in relevant part: "SHORT TITLE: UNIFORM CERTIFICATION OF QUESTIONS OF LAW ACT. . . .

"(b) The supreme court may answer questions of law certified to it by . . . a United States district court when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

"(c) This section may be invoked by an order of [the United States district court] upon the court's own motion or upon the motion of any party to the cause.

"(d) A certification order shall set forth: (1) The questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose."

See also Practice Book § 4168.

that he had not been convicted of a moving violation within the last five years. None of these statements was true. A woman representing herself to be Menard's wife then went to the Guardian office, where she signed Menard's name and her own to the insurance application and made a deposit payment of $120. The application contained incorrect driver's license numbers for Menard and for his alleged wife. Guardian issued an insurance binder effective February 8, 1990, providing, in part, single limit liability coverage in the amount of $300,000. The binder would not have issued but for the misrepresentations made by Menard.

Guardian immediately forwarded the insurance application and the deposit to the defendant. On February 23, 1990, Guardian was notified by the defendant that it had been unable to obtain a motor vehicle report concerning Menard or his alleged wife from the state of Connecticut. The defendant asked Guardian to confirm the license numbers that had been provided to it. On March 3, 1990, a Guardian agent telephoned the number given on the insurance application, which was the telephone number of Menard's mother, and left a message for Menard. On March 8, 1990, having reached Menard at his work place, a Guardian agent asked Menard to verify his license number. Menard replied that he did not have his license with him and would have to call back. He failed to do so.

On March 15, 1990, the plaintiffs were injured in a two car accident that was caused by Menard, who was driving the car listed on the binder issued by Guardian. Menard died as the result of the accident.

On March 20, 1990, five days after the accident in which the plaintiffs were injured and Menard was killed, the defendant obtained the correct driver's license numbers for Menard and his alleged wife. The defendant then obtained accurate information about Menard's

driving record from the Connecticut department of motor vehicles. On April 5, 1990, twenty-one days after the accident and fifty-six days after the binder had become effective, the defendant sent a letter to Menard's alleged wife in which it gave her notice that Menard's application for insurance had been "rejected" and that coverage was "rescinded."

The question in this case is whether the legislature abrogated the insurer's common law right of rescission when it enacted the automobile insurance statutes, General Statutes § 38a-334 et seq. While the legislature's authority to abrogate the common law is undeniable, we will not lightly impute such an intent to the legislature. "[C]ourts must discharge their responsibility, in case-by-case adjudication, to assure that the body of the law—both common and statutory—remains coherent and consistent." *Fahy* v. *Fahy*, 227 Conn. 505, 513–14, 630 A.2d 1328 (1993). "Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose can be overcome only if the legislative intent is clearly and plainly expressed." *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 290, 627 A.2d 1288 (1993); *State* v. *Sanchez*, 204 Conn. 472, 479, 528 A.2d 373 (1987). We conclude that the compulsory automobile insurance statutes, read as a whole, abrogate the right of an insurer to rescind automobile insurance ab initio so as to deny recovery to an innocent third party victim.[3]

In *Middlesex Mutual Assurance Co.* v. *Walsh*, 218 Conn. 681, 692, 590 A.2d 957 (1991), we explained that at common law, an insurer has a right to rescind for material misrepresentation in an insurance application

---

[3] We do not decide whether a different result would obtain in an action directly between the insured and the insurer. See, e.g., *Continental Western Ins. Co.* v. *Clay*, 248 Kan. 889, 895, 811 P.2d 1202 (1991) (permitting rescission as against insured but not injured third party).

if that misrepresentation is "known by the insured to be false when made." Our common law of automobile insurance contracts is therefore more restrictive than our common law of contracts generally.[4] Automobile insurance, however, may be rescinded at common law on the basis of intentional material misrepresentation.

General Statutes § 38a-340, formerly § 38-175e, authorizes an automobile liability insurer to issue a temporary policy, known as a binder, pending its undertaking of permanent insurance coverage. Under § 38a-340, a binder may not be issued for a period exceeding sixty days, and its provisions must comply with the legislative mandates of General Statutes §§ 38a-334 to 38a-336, inclusive, § 38a-338, and §§ 38a-340 to 38a-345, inclusive. General Statutes § 38a-343, formerly § 38-175h, in turn, provides in relevant part: "No notice of cancellation of a policy which has been in effect for less than sixty days may be effective unless mailed or delivered by the insurer at least forty-five days before the effective date of cancellation, provided that *at least ten days' notice* shall be given where cancellation is for nonpayment of premium or *material misrepresentation.*" (Emphasis added.)

---

[4] As a matter of common law, a party to a contract other than an automobile insurance contract may rescind that contract and avoid liability thereunder if that party's consent to the contract was procured either by the other party's fraudulent misrepresentations, or by the other party's nonfraudulent material misrepresentations. *State* v. *Hartford Accident & Indemnity Co.*, 136 Conn. 157, 167, 70 A.2d 109 (1949); *E. & F. Construction Co.* v. *Stamford,* 114 Conn. 250, 257–58, 158 A. 551 (1932); 1 Restatement (Second), Contracts § 162 (1981) (defining fraudulent and material), and § 164 (1), and especially comment (b) thereto. Accordingly, the party seeking to rescind need not demonstrate that the other party's misrepresentations were made intentionally, provided that they are material to the contract. See, e.g., 1 Restatement (Second), supra, § 164, illustration 2; cf. 7 G. Couch, Cyclopedia of Insurance Law (2d Ed. 1985) § 35:119 (collecting cases from other jurisdictions permitting rescission of automobile insurance contract on basis of innocent material misrepresentation).

The defendant argues that the reference in § 38a-343 to *cancellation* for material misrepresentation does not abrogate an insurer's common law right of rescission for *intentional* material misrepresentation. In the defendant's view, an insurer who exercises due diligence in verifying the information provided by an applicant retains the right to avoid the contract ab initio for intentional material misrepresentation. The plaintiffs, on the other hand, argue that the inclusion of a cancellation provision specifically addressing material misrepresentation indicates that the legislature intended § 38a-343 to be an insurer's exclusive remedy for misrepresentations, whether made intentionally or not. On this construction, because the notice of cancellation was not sent until after the accident, the defendant could not avoid liability to the plaintiffs, because under the statute the cancellation necessarily became effective only after the accident had occurred. In the context of an action brought by an injured third party, we agree with the plaintiffs' reading of the applicable statutes.

The defendant is correct that, in statutes other than § 38a-343, the legislature has undertaken, in so many words, to distinguish between cancellation on the one hand and annulment or rescission on the other. See, e.g., General Statutes §§ 38a-321 (referring in disjunctive to "cancellation" or "rescission") and 38a-567 (1) (C) (small employer health insurance plans can be *"rescinded* for . . . material misrepresentation" [emphasis added]). These textual clues, though not occurring in the automobile insurance subchapter itself,[5] could suggest a legislative intent to limit the applicability of the provisions in § 38a-343 to instances

[5] Chapter 700 is entitled "PROPERTY AND CASUALTY INSURANCE." Section 38a-321 is located in part I of the chapter, entitled "IN GENERAL," while § 38a-343 is located in part II of the chapter, entitled "MOTOR VEHICLE POLICIES."

of *prospective* termination of insurance binders. See generally *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 573, 522 A.2d 763 (1987) (meaning of term in statute determined in part by looking to related statutes in same chapter).

Such an interpretation also could find support in cases arising under § 38a-321[6] and its predecessors dating back to the 1930s, in which we have authorized automobile insurers to exercise their right to annul an insurance contract even when intervening third party interests may be adversely affected. We repeatedly have interpreted that statute to provide that "[a] party subrogated to the rights of an assured . . . obtains no different or greater rights against the insurer than the insured possesses and is equally subject to any defense the insurer may have against the assured under the policy. *Arton* v. *Liberty Mutual Ins. Co.*, 163 Conn. 127, 139–40, 302 A.2d 284 (1972); *Commercial Contractors Corporation* v. *American Ins. Co.*, 152 Conn. 31, 40, 202 A.2d 498 (1964); *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, 138 Conn. 298, 305, 84 A.2d 267 (1951); *Goergen* v. *Manufacturers Casualty Ins. Co.*, 117 Conn. 89, 93, 166 A. 757 (1933); *Rochon* v. *Preferred Accident Ins. Co.*, 114 Conn. 313, 315–16, 158 A. 815 (1932)." *Brown* v. *Employer's Reinsurance Corp.*, 206 Conn. 668, 673, 539 A.2d 138 (1988).

---

[6] General Statutes § 38a-321, formerly § 38-175, provides in relevant part: "LIABILITY OF INSURER UNDER LIABILITY POLICY. Each insurance company which issues a policy to any person, firm or corporation, insuring against loss or damage on account of the bodily injury or death by accident of any person, or damage to the property of any person, for which loss or damage such person, firm or corporation is legally responsible, shall, whenever a loss occurs under such policy, become absolutely liable, and the payment of such loss shall not depend upon the satisfaction by the assured of a final judgment against him for loss, damage or death occasioned by such casualty. No such contract of insurance shall be cancelled or annulled by any agreement between the insurance company and the assured after the assured has become responsible for such loss or damage, and any such cancellation or annulment shall be void. . . ."

While those cases focused on the insured's alleged failure to cooperate, nothing in their holdings suggests that they would not have applied to an insured's material intentional misrepresentations to the insurer.

Indeed, some courts have recognized a distinction between cancellation and rescission for purposes of insurance contracts. In *Klopp* v. *Keystone Ins. Co.*, 528 Pa. 1, 7–8 n.6, 595 A.2d 1 (1991), for example, the Pennsylvania Supreme Court held that cancellation refers to prospective termination only, while rescission "is an abrogation of all rights and responsibilities of the parties towards each other from the inception of the contract. It is a form of retroactive relief." See also *United Security Ins. Co.* v. *Commissioner of Ins.*, 133 Mich. App. 38, 42, 348 N.W.2d 34 (1984) ("[r]escission is insufficiently similar to cancellation to support the conclusion that the Legislature's enactment of a statute controlling cancellation of an automobile insurance policy without mentioning rescission demonstrates the Legislature's intent to preclude rescission");[7] 8 J. Appleman, Insurance Law and Practice (1973) § 5011, p. 441; R. Keeton & A. Widiss, Insurance Law (1988) § 6.10 (e), p. 739 (discussing different ramifications of cancellation and rescission).

Despite these sources of support for the defendant's argument, however, reading the automobile insurance statutes as a whole persuades us that the defendant's proffered interpretation is untenable. We presume that the term "cancellation" retains the same meaning throughout the automobile insurance statutes; see *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 343, 612 A.2d 1203 (1992); and neither party has suggested

---

[7] In *United Security Ins. Co.* v. *Commissioner of Ins.*, supra, 133 Mich. App. 38, the Michigan Appellate Court affirmed an insurer's right to rescind an automobile insurance contract, as against the insured, on the basis of intentional material misrepresentation. The court, however, distinguished the case from one in which the claim was made by a third party. Id., 43.

otherwise. In General Statutes § 38a-343a,[8] the legislature provided that insurance companies, on a monthly basis, must notify the commissioner of motor vehicles of the "cancellation" of all previously issued automobile insurance policies which occurred during the preceding month. The commissioner is then required to use that information to determine whether the cancelled insured has maintained the legally required insurance coverage. The evident purpose of this statute is to facilitate the suspension of motor vehicle registrations for failure to maintain insurance.

If we were to follow the defendant's reasoning, the notification procedures established in § 38a-343a would not apply when the insurer seeks to rescind an insurance binder ab initio, because the statute refers solely to "cancellation." We have found no legislative history to support such a statutory distinction. Rather, the legislature appears to have intended, as a means of controlling insurance costs, to establish a comprehensive program that would facilitate the license revocation of *all* drivers who do not have proper insurance. See 36 S. Proc., Pt. 12, 1993 Sess., pp. 4468–71. The limited applicability of § 38a-343a that would follow from the defendant's interpretation of the term "cancellation" cannot be reconciled with this manifest legislative intent.

Similar problems emerge from the application of the defendant's interpretation to General Statutes §§ 38a-344 (valid form of notice of cancellation), 38a-345 (notification from insurer to former insured of potential eligibility for assigned risk pool), and 38a-346 (immunity from civil liability arising out of notice of

---

[8] We recognize that § 38a-343a became effective after the date of the accident that led to this litigation. See Public Acts 1993, No. 93-298. The term "cancellation" had already been used in General Statutes §§ 38a-344 through 38a-346, however, all of which predate the 1982 enactment of the relevant language in § 38a-343. See Public Acts 1982, No. 82-353, § 2.

cancellation). The policy arguments that might support a distinction between cancellation and rescission in the limited ambit of § 38a-343 dissipate when that distinction is tested against the statutory landscape as a whole. We conclude, accordingly, that the legislature did not intend the insurer's common law right of rescission as against an innocent third party for intentional material misrepresentation by the insured to survive the enactment of § 38a-343.

We note that our result today is consistent with the conclusion reached by other courts that have addressed the effect of a legislative scheme of compulsory automobile insurance on the common law right of rescission. See annot., 83 A.L.R.2d 1104 (1962) and supplemental sections. Although many of these cases arise out of different statutory enactments, they reflect the common policy of providing financial protection for those injured in automobile accidents.

The certified question that we agreed to answer for the District Court asked "[w]hether intentional material misrepresentations on an application for insurance give the insurance company the right to rescind the insurance contract with the effect that it is void ab initio?" The answer to the certified question is: No, under the circumstances of this case.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.