## WESTERN ALLIANCE INSURANCE CO.

v.

## WELLS FARGO ALARM SERVICES, INC., and Udolf Properties.

No. 3:93CV1907 (JBA).

United States District Court,
D. Connecticut.

March 26, 1997.

Michael Thomas Wade, Reid & Riege, P.C., Hartford, CT, Jeffrey L. Ment, Rome, McGuigan, Sabanosh & Klebanoff, Hartford, CT, David A. Curry, F. Timothy McNamara, Hartford, CT, for plaintiff.

Matthew G. Conway, Danaher, Tedford, Lagnese & Neal, Hartford, CT, for Wells Fargo Alarm.

Matthew G. Conway, Danaher, Tedford, Lagnese & Neal, Hartford, CT, Miles David Newman Esty, Frankel & Thornberry, Bridgeport, CT, for Udolf Properties.

RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT *[DOC. # 7, # 15] AND DEFENDANT WELLS FARGO'S OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDED RULING [DOC. # 32]*

ARTERTON, District Judge.

This is a breach of contract case brought by Western Alliance as subrogee of furrier Lloyds & Robarts, from whom numerous furs were stolen during a robbery of its premises. Defendant Wells Fargo Alarm Services installed and maintained a security/alarm system in the fur store. During the burglary, the security/alarm system installed by Wells Fargo, including the system's Passive Infrared Intrusion Detectors, failed to activate or detect the intruders. Plaintiff's complaint against Wells Fargo alleges breach of contract and negligent misrepresentation. Wells Fargo moves for summary judgment on the ground that it is not liable to plaintiff for either breach of contract or negligent misrepresentation by virtue of the exculpatory clause in the contract between it and Lloyds.

Defendant Udolf Properties leased the retail premises to Lloyds. Prior to the burglary, Lloyd's advised Udolf that the premises adjacent to the fur store were kept unsecured and that this could pose a security risk to Lloyds, to which information Udolf failed to respond. Udolf moves for summary judgment on the grounds that a clause in its lease with Lloyds releases it from liability for both negligence and nuisance.

On September 30, 1996, Magistrate Judge Martinez filed a Recommended Ruling denying both motions for summary judgment, concluding that issues of material fact remained for trial with respect to the operation of the exculpatory provisions in both the Wells Fargo contract and the Udolf lease. Wells Fargo filed a timely objection to the Magistrate Judge's recommended ruling. Udolf did not file an objection to that ruling.

## DEFENDANT UDOLF PROPERTIES

Upon review and pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 2 of the Local Rules for United States Magistrates (D.Conn.1995), Magistrate Judge Martinez's recommended ruling denying defendant Udolf's Motion for Summary Judgement [doc. 15], is APPROVED and ADOPTED as the ruling of this Court absent objection.

## DEFENDANT WELLS FARGO ALARM SERVICES

In Count One of its complaint against Wells Fargo, plaintiff alleges that the alarm system Wells Fargo installed failed to detect any motion while the burglary occurred, that Wells Fargo failed to properly install Passive Infrared Intrusion Detectors which would de-

tect motion inside the storage bins, and that the alarm system failed to activate when the intruders were removing the furs. In deny-ing Wells Fargo's summary judgment motion, Magistrate Judge Martinez concluded that the exculpatory clause in the Wells Fargo/Lloyds contract did not excuse Wells Fargo from liability because installation of a properly installed and functioning alarm system may be a condition precedent to Wells Fargo's enforcement of the exoneration clause, (Rec. Rul. at 5), and thus whether the parties intended proper installation to be a condition precedent in the contract was a genuine issue of fact for trial. With respect to plaintiff's negligent misrepresentation count against Wells Fargo, the Magistrate Judge concluded that because a material misrepresentation may void an otherwise enforceable contract, whether there was such a misrepresentation in this case was a question of fact warranting denial of Wells Fargo's summary judgment motion.

Wells Fargo objects to the Recommended Ruling on three grounds. First, Wells Fargo contends that the recommended ruling is at variance with the overwhelming case law supporting the enforcement of exculpatory clauses under analogous fact scenarios. Second, defendant argues that the recommended ruling does not address the limitation of liability provision included in the exculpatory clause, and is thus incomplete. Finally, Wells Fargo maintains that the recommended ruling fails to consider the public policy reasons which support the enforcement of such clauses in alarm system contracts.

The exculpatory and limitation of damages provision in the Wells Fargo/Lloyd's alarm system contract provides:

*IT IS UNDERSTOOD AND AGREED BY SUBSCRIBER THAT WELLS FARGO ALARM IS NOT AN INSURER;* THAT THE SUMS PAYABLE HEREUNDER TO WELLS FARGO ALARM BY SUBSCRIBER ARE BASED UPON THE VALUE OF SERVICES OFFERED AND THE SCOPE OF LIABILITY UNDERTAKEN AND SUCH SUMS ARE NOT RELATED TO THE VALUE OF PROPERTY BELONGING TO THE SUBSCRIBER OR TO OTHERS LOCATED ON SUBSCRIBER'S PREMISES. SUBSCRIBER FURTHER AGREES AND PROMISES THAT, IF IT DESIRES INSURANCE, SUBSCRIBER'S INSURANCE WILL BE OBTAINED FROM AN INSURANCE COMPANY IN SUCH AMOUNT AS SUBSCRIBER SHALL DEEM NECESSARY TO PROTECT ITS INTERESTS. SUBSCRIBER DOES NOT AND WILL NOT SEEK INDEMNITY FROM WELLS FARGO ALARM AGAINST ANY DAMAGES OR LOSSES CAUSED BY HAZARDS TO SUBSCRIBER'S PROPERTY. *WELLS FARGO ALARM MAKES NO WARRANTY. EXPRESSED OR IMPLIED, THAT THE SYSTEMS IT INSTALLS OR THE SERVICES IT FURNISHES WILL AVERT. OR PREVENT OCCURRENCES, OR THE CONSEQUENCES THEREFROM WHICH THE SYSTEMS AND SERVICES ARE DESIGNED TO DETECT. SUBSCRIBER AGREES THAT WELLS FARGO ALARM SHALL NOT BE LIABLE FOR ANY OF SUBSCRIBER'S LOSSES OR DAMAGES, IRRESPECTIVE OF ORIGIN, TO PERSON OR TO PROPERTY, WHETHER DIRECTLY OR INDIRECTLY CAUSED BY PERFORMANCE OF NONPERFORMANCE OF ANY OBLIGATION IMPOSED BY THIS AGREEMENT OR BY NEGLIGENT ACTS OR OMISSIONS OF WELLS FARGO ALARM. ITS AGENTS OR EMPLOYEES.* IT IS AGREED THAT IF WELLS FARGO ALARM SHOULD BE FOUND LIABLE FOR ANY LOSSES OR DAMAGES ATTRIBUTABLE TO A FAILURE OF SYSTEMS OR SERVICES IN ANY RESPECT, ITS LIABILITY SHALL BE LIMITED TO THE ANNUAL CHARGE HEREUNDER, OR $10,000.00, WHICHEVER IS LESS. THE SUBSCRIBER MAY OBTAIN A GREATER LIMITATION OF LIABILITY, IF DESIRED, BY PAYMENT OF AN INCREASED ANNUAL RATE, WHICH SHALL BE NEGOTIATED BETWEEN THE SUBSCRIBER AND WELLS FARGO

ALARM UPON THE REQUEST OF THE SUBSCRIBER IN WRITING.

(Emphasis added).

■ Where the Connecticut Supreme Court has not addressed the enforceability of a contract disclaimer of tort liability in the sale or installation of an alarm system, the Court must determine what it believes the state's highest court would find if the same issue were before it. *Continental Casualty Co. v. Pullman, Comley, Bradley & Reeves*, 929 F.2d 103, 105 (2d Cir.1991). "In making such a determination, a federal court is free to consider all of the resources to which the highest court of the state could look, including decisions in other jurisdictions on the same or analogous issues." *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir.1993).

In *Leon's Bakery*, a bakery whose property was damaged by fire sought to recover for that damage and for lost profits from the company who manufactured and installed the fire alarm and sprinkler system which allegedly malfunctioned. The district court granted summary judgment in favor of the alarm company on the ground that plaintiff's claims were foreclosed by a limitation of liability provision in the alarm system contract. The alarm system contract provided that:

> "[i]n no event shall Seller be liable for special or consequential damages and Seller's liability on any claim whether or not based in contract or in tort or occasioned by Seller's active or passive negligence for loss or liability arising out of or connected with this contract, or any obligation resulting therefrom, or from the manufacture, fabrication, sale, delivery, installation, or use of any materials covered by this contract, shall be limited to that set forth in the paragraph entitled 'warranty.'"

990 F.2d at 47. Plaintiff contended that the district court erred in granting summary judgment on the clause because it argued that the limitation clause was unenforceable under Connecticut law. Recognizing the Connecticut Supreme Court's silence on this issue, the Second Circuit reviewed the decisions of other jurisdictions, as well as the Connecticut Superior Court, and found that

several courts have upheld the enforceability of clauses limiting liability for the failure of alarm systems in contracts for the installation and servicing of burglar alarms. *Id.* at 48 (citing *E.H. Ashley & Co. v. Wells Fargo Alarm Services*, 907 F.2d 1274, 1278 (1st Cir.1990)) (collecting cases from six states holding that contract clauses limiting liability of burglar alarm services were enforceable); *Schrier v. Beltway Alarm Co.*, 73 Md.App. 281, 533 A.2d 1316, 1319 (1987) (collecting cases from fourteen jurisdictions so holding); *Hanover Insurance Co. v. American District Telegraph Co.*, 5 Conn.L.Rptr. 324, 1991 WL 269106 (Conn.Super.1991) (Stengel, J.) (rejecting contention that contract clause limiting the liability of an allegedly negligent seller and monitor of burglar alarm system was unconscionable).

In *Sue & Sam Manufacturing Co. v. United Protective Alarm Systems*, 119 A.D.2d 664, 501 N.Y.S.2d 102 (1986), the court held that an exculpatory clause in a contract for the installation, leasing or servicing of an alarm system negated the alarm installer's breach of contract liability for allegedly failing to install two motion detectors as required by contract, noting that New York courts have "repeatedly and consistently enforced exculpatory clauses in contracts for the installation, leasing, and servicing of alarm systems, and have dismissed claims for breach of these contracts where the plaintiff seeks to recover damages for losses sustained as a result of burglaries." *Id.* (citations omitted).

The plaintiff in *Sue & Sam Manufacturing* advanced a similar argument to that of plaintiff here, that defendant breached the contract at its inception by failing to install two motion detectors as required by the contract, rather than breaching when the alarm itself failed to activate. *Id.* at 102–03. The Appellate Division found no legal basis for such a distinction, concluding that "exculpatory clauses have been enforced where the defendant is alleged to have breached the contract at its inception, i.e., by negligently installing the alarm equipment [citation omitted] ... Furthermore, the exculpatory clause of the contract explicitly covers 'the failure to perform any obligation under this agreement.'"

*Id.* at 103. *See also Ace Formal Wear, Inc. v. Baker Protective Service, Inc.,* 416 So.2d 8, 9 (Fla.App.1982) (affirming summary judgment for defendant on grounds of the identical Wells Fargo [a division of Baker] exculpatory clause in an alarm contract).

The Second Circuit in *Leon's Bakery* set forth the policy concerns underlying the enforceability of exculpatory clauses in alarm system contracts:

> "[m]ost persons, especially operators of business establishments, carry insurance for loss due to various types of crime. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect that the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime."

990 F.2d at 48–49 (citation omitted)(alteration in original). Thus, "[e]ven where the contract is not only for the sale and installation of a burglar alarm system but is also for its maintenance or monitoring, if the fee paid is not sufficiently high to include a premium for theft insurance, a clause limiting the alarm service company's liability in the event the alarm system does not function properly is not unconscionable." *Id.* at 49.

Because the owner or custodian of the alarmed property is in a "far better" position than the alarm system seller to know the property's value and to bargain with an insurance company for appropriate coverage and an appropriate premium, the alarm seller's " 'limitations on liability help keep alarm services affordable.' " *Id.* (quoting *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d, 957, 962, 593 N.E.2d 1365 (Ct.App. 1992)).

■ Thus, notwithstanding the Connecticut Supreme Court's silence on the issue, the weight of authority finding exculpatory clauses in alarm systems contracts enforceable, particularly *Sue & Sam Manufacturing* in which plaintiff's theory of proper alarm system installation as a condition precedent to enforcement of a similar exculpatory clause was rejected, in combination with the salutary policy interests underlying such clauses discussed by the Second Circuit in *Leon's Bakery,* militates in favor of finding that the clause in the instant Wells Fargo contract forecloses plaintiff's claim of breach of contract. Therefore, defendant Wells Fargo's objections to the Recommended Ruling are sustained and its motion for summary judgment is granted as to Count One for breach of contract.

Magistrate Judge Martinez also recommended that summary judgment be denied on Count Two of plaintiff's complaint for negligent misrepresentation because a material misrepresentation may make an otherwise enforceable contract voidable, including an exculpatory clause in such a contract. *See Munroe v. Great Am. Ins. Co.,* 234 Conn. 182, 188 n. 4, 661 A.2d 581 (1995) (holding that a party may rescind a contract and avoid liability thereunder if the party's consent to the contract was procured by the other party's either fraudulent or nonfraudulent material misrepresentations).

■ However, outside of the conclusory allegation in its complaint, plaintiff fails to demonstrate any factual support whatsoever for its claim that "as part of the modification of the alarm/security system, on or about October, 1990, the Defendant represented to Lloyds & Robarts that the PIR's [Passive Infrared Intrusion Detectors] installed on the first floor would provide motion protection for any intrusion inside said six storage bins." (Compl. ¶¶ 18, 23). Indeed, plaintiff's Statement of Material Facts That Present Genuine Issues to be Tried refers only to the conclusory allegation in its complaint in support of its claim that Wells Fargo misrepresented the capability of the motion detectors with respect to the storage bins.

In addition, plaintiff fails to make any showing that defendant Wells Fargo failed to exercise reasonable care or competence in obtaining or communication the information to plaintiff, i.e., that Wells Fargo knew or should have known of the untruthfulness of the alleged statement at the time it was made. *See Williams Ford, Inc. v. Hartford Courant Co.,* 232 Conn. 559, 575, 657 A.2d

212 (1995) (setting forth the cause of action for negligent misrepresentation as "[o]ne who, in the course of his business, profession of employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.").

Thus, without more, plaintiff fails to establish a genuine issue of material fact for trial regarding defendant's alleged misrepresentations because it has failed to submit evidence beyond the pleadings. *See Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986) (in order to defeat a properly supported motion for summary judgment, plaintiff must present affirmative evidence).

In sum, where plaintiff has failed to demonstrate a factual issue surrounding any claimed misrepresentation by Wells Fargo, the reasoning of *Munroe*, that a material misrepresentation may make an otherwise enforceable contract voidable, is inapplicable to preclude summary judgment for defendant. Therefore, defendant Wells Fargo's objections to the Recommended Ruling are sustained and its motion for summary judgment is granted as to Count Two.[1]

## CONCLUSION

Wells Fargo's objections to the Recommended Ruling are sustained and its Motion for Summary Judgment [doc. # 7] is GRANTED.

The Recommended Ruling DENYING Udolf Properties' Motion for Summary Judgment [doc. # 15], is APPROVED and ADOPTED as the ruling of this Court.

IT IS SO ORDERED.

1. Wells Fargo objects to Magistrate Judge Martinez's failure to address the limitation of damages clause in the contract limiting a subscriber's damages to the annual charge under the contract or $10,000.00, whichever is less, in the event that Wells Fargo is held liable for a subscriber's damages. However, in view of the Court's conclu-sion that Wells Fargo is not liable by virtue of the exculpatory clause in the Wells Fargo/Lloyds contract, and that plaintiff has failed to demonstrate an issue of fact surrounding the claimed material misrepresentation by defendant in Count Two, the Court does not reach the damages limitation issue.

### RECOMMENDED RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

MARTINEZ, United States Magistrate Judge.

This is an action for damages arising out of the theft of numerous furs from Lloyds & Robarts ("Lloyds"), a fur store in West Hartford, Connecticut. At the time of the burglary Lloyds was insured by the plaintiff Western Alliance Insurance Company ("Western Alliance"), which brings this action as subrogee of Lloyds. The defendants in this action are Wells Fargo Alarm Services ("Wells Fargo") and Udolf Properties ("Udolf"), Lloyds's landlord. The complaint against Wells Fargo alleges two causes of action: breach of contract and negligent misrepresentation. The complaint asserts two claims against Udolf: negligence and nuisance. Wells Fargo and Udolf have both moved for summary judgment on the claims asserted against them. For the following reasons, the motions should be denied.

### I. Facts

Based on the pleadings and other documentary evidence, the following relevant facts are not in dispute. Lloyds operated a retail furrier business in West Hartford, Connecticut, in premises which it leased from Udolf. Western Alliance provided a policy of insurance to Lloyds for losses by theft. Wells Fargo installed and maintained a security/alarm system in the fur store. The system included "Passive Infrared Intrusion Detectors" ("PIRs"). The contract between Lloyds and Wells Fargo provided that the PIRs would provide motion protection for any intrusion in the store as well as in six storage bins where Lloyds stored furs.

In January, 1992 unknown intruders entered a place of business adjoining Lloyds and broke through a common wall that sepa-

rated the two premises. The common wall was located directly behind the six storage bins where Lloyds stored the furs. The thieves stole 66 furs from the bins. During the break-in, the security/alarm system installed by Wells Fargo, including the PIRs, did not activate or detect the intruders.

At some point before the break-in, Lloyds advised Udolf that the adjacent premises were kept unlocked and unsecured and that this posed a security risk to Lloyds because someone could gain access to Lloyds by entering the adjoining premises and breaking through the common wall. Udolf, however, took no steps to secure the premises adjacent to Lloyds.

Pursuant to its insurance contract with Lloyds, Western Alliance paid Lloyds $70,800 for the loss of the furs. Western Alliance is subrogated to the rights of Lloyds and brings this action as subrogee.

The contract between Lloyds and Wells Fargo contains an exculpatory clause. The clause states that (1) Wells Fargo was not an insurer; (2) the sums payable by Lloyds for Wells Fargo's services were based upon the value of services offered and the scope of liability undertaken by Wells Fargo and were not related to the value of property belonging to Lloyds; (3) Lloyds, if it desired insurance, would obtain it from an insurance company in an amount that Lloyds deemed necessary to protect its interests; (4) Lloyds would not seek indemnity from Wells Fargo for damages or losses to Lloyds's property, whether directly or indirectly caused by the performance or nonperformance of any obligation imposed by the contract or by any negligence of Wells Fargo; and (5) the clause limited Wells Fargo's liability for any loss attributable to a failure of the system to the lesser of the annual charge for services or $10,000.

The lease agreement between Lloyds and Udolf dated May 15, 1987 contains a clause entitled "Tenant's Insurance". This clause provides that the tenant shall carry insurance on its fixtures and equipment. It further provides that the parties:

> specifically understand and agree that Landlord shall not be liable to Tenant ... for any damage to, or loss (by theft or otherwise) of, any property of Tenant of any kind or nature . . . . .

The lease also contains a clause entitled "Tenant's Risk." This clause states:

> [a]ll of the furnishings, fixtures, equipment, effects and property of every kind, nature and description of Tenant ... which, during the continuance of this Lease or any occupancy of the Premises shall be the sole risk and hazard or Tenant, and if the whole or any part thereof shall be destroyed or damaged by fire, water ... [or] theft ... no part of said loss or damage is to be charged to or borne by Landlord.

## II. *Discussion*

Wells Fargo asserts that it is not liable to Western Alliance for either breach of contract or negligent misrepresentation by virtue of the broad exculpatory clause of the contract between it and Lloyds. Similarly, Udolf maintains that the clauses in the lease between it and Lloyds absolve it from liability under both of the asserted causes of action, negligence and nuisance.

### A. *Count One—Breach of Contract (Wells Fargo)*

In count one Western Alliance asserts that Wells Fargo breached its contract with Lloyds because (1) the alarm system that Wells Fargo installed failed to detect any motion during the time the intruders were removing the furs; (2) Wells Fargo failed to install PIRs that would detect motion inside the storage bins; and (3) the alarm system failed to activate when the intruders were removing the furs. Western Alliance does not disagree with Wells Fargo's contention that a contractual exculpatory clause such as the one at issue here may exonerate alarm companies when an alarm system fails to activate during a burglary. *See Leon's Bakery, Inc. v. Grinnell Corp.,* 990 F.2d 44, 49 (2d Cir.1993). Western Alliance maintains, however, that the clause does not affect the liability of an alarm company that, as is alleged here, fails to properly install an alarm system and in so doing does not fully perform the contract it is seeking to enforce.

In other words, Western Alliance argues that installation of a properly installed and functioning alarm system is a condition precedent to Wells Fargo's enforcement of the exoneration clause. *See Ravitch v. Stollman Poultry Farms, Inc.,* 165 Conn. 135, 328 A.2d 711 (1973).

A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance under a contract. If a condition precedent is not fulfilled the contract is not enforceable. *Luttinger v. Rosen,* 164 Conn. 45, 47–48, 316 A.2d 757 (1972) (citations omitted; internal quotation marks omitted); *see also Feinberg v. Berglewicz,* 32 Conn.App. 857, 860, 632 A.2d 709 (1993). Where a contract contains a condition precedent, a party to the contract may refuse to perform its obligations under the contract if the condition has not occurred.

Whether a provision in a contract is a condition depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the contractual language interpreted in light of all the surrounding circumstances that existed when the contract was executed. *Id.* In general, "a determination of what the parties intended by contractual commitments is a 'question of fact'" *Gaynor Elec. Co. v. Hollander,* 29 Conn.App. 865, 872, 618 A.2d 532 (1993) (citing *Thompson & Peck, Inc. v. Harbor Marine Contracting Corp.,* 203 Conn. 123, 130–31, 523 A.2d 1266 (1987)).

Here, there is a genuine issue of fact concerning whether the parties intended installation of a functioning alarm system to be a condition to Wells Fargo's enforcement of the exculpatory clause. Further, if installation of a properly functioning alarm system is found to be a condition, there is an additional factual issue concerning whether the installed system was actually installed as promised. Wells Fargo's motion for summary judgment on count one based on the exculpatory clause should be denied.

### B. Count Two—Negligent Misrepresentation (Wells Fargo)

In count two Western Alliance asserts that Wells Fargo knew or should have known that the PIRs would not activate when furs were removed from the storage bins and that Wells Fargo negligently represented to Lloyds that the alarm system would detect motion when in fact they would not do so. Wells Fargo asserts that the exculpatory clause also applies to this count and that, pursuant to the clause, judgment should enter as a matter of law.

A material misrepresentation, as alleged in count two, may make an enforceable contract voidable. *See* Restatement (Second) of Contracts § § 163, 164. Thus, even a valid and enforceable exoneration clause may be voided as a result of negligent misrepresentation of a material fact. *See Munroe v. Great Am. Ins. Co.,* 234 Conn. 182, 188 n. 4, 661 A.2d 581 (1995). Whether there was such a misrepresentation here is a question of fact and Wells Fargo's motion for summary judgment on count two should be denied.

### C. Counts Three & Four—Negligence & Nuisance (Udolf)

In count three Western Alliance asserts that Udolf is liable in negligence for not properly securing the premises adjacent to Lloyds. In count four Western Alliance alleges that Udolf is liable for creating and maintaining a nuisance. Western Alliance maintains that the exculpatory clauses in the lease between Udolf and Lloyds are invalid under Connecticut law because a party cannot by contract relieve itself of liability for its own active negligence or nuisance.

There does not appear to be a Connecticut decision dealing with the question of whether a lease provision that absolves a landlord of all liability for any damage or loss to a tenant's property in the leased premises is enforceable against claims of negligence and nuisance. In the absence of a state court decision on this issue, the federal court "must make an estimate of what the state's highest court would rule to be its law." *Carpentino v. Transport Ins. Co.,* 609 F.Supp. 556, 560 (D.Conn.1985). In doing so, the court may consider all data the high court would use in reaching its decision. *Doyle v. St. Paul Fire & Marine Ins. Co.,* 583 F.Supp. 554, 555 (D.Conn.1984).

With respect to exculpatory clauses in general, the Connecticut Supreme Court has expressly stated that Connecticut law does not favor contract provisions which relieve a person from his own negligence. *Griffin v. Nationwide Moving & Storage Co., Inc.,* 187 Conn. 405, 446 A.2d 799 (1982) (finding that it is against public policy for bailee to contractually limit liability for his own negligence) (citing Restatement (Second) Contracts § 195, comment b). The court has, however, acknowledged that such provisions may be upheld in proper circumstances, *id.* (citing *Malone v. Santora,* 135 Conn. 286, 293, 64 A.2d 51 (1949)), but has not delineated what constitutes "proper circumstances." Accordingly, this court, as the Connecticut Supreme Court often does, looks to the Restatement and to decisions of neighboring states for guidance.

■ Comment b to section 195 of the Restatement of Contracts, which the Supreme Court cited in *Griffin, supra,* provides that language inserted by a party in an agreement to exempt it from liability for negligent conduct should be scrutinized with particular care. Restatement (Second) of Contracts § 195, comment b. The Restatement, and cases from other jurisdictions, also provide that a party should not be permitted to exempt itself from liability for its gross negligence. *See id.; see also Colnaghi USA, Ltd. v. Jewelers Protection Services, Ltd.,* 81 N.Y.2d 821, 595 N.Y.S.2d 381, 382–83, 611 N.E.2d 282 (1993). Exculpatory clauses which insulate a party from liability for his own acts are strictly construed against the party relying on them and must specifically and conspicuously identify the precise acts which the parties intend to exempt from liability. *See Tremblay v. Theiss,* 152 A.D.2d 793, 543 N.Y.S.2d 573, 574–75 (N.Y.App.Div. 1989); *J.A. Jones Constr. Co. v. City of Dover,* 372 A.2d 540 (Del.Super.Ct.1977), *app. dismissed,* 377 A.2d 1 (Del.1977); *Della Corte v. Incorporated Village of Williston,* 60 A.D.2d 639, 400 N.Y.S.2d 357 (N.Y.App.Div. 1977); *but see Burkle v. Car & Truck Leasing Co.,* 1 Conn.App. 54, 467 A.2d 1255 (1983) (construing clause in automobile lease that provided lessee would indemnify and hold lessor harmless from any and all liability was broad enough to include promise to indemnify lessor for his own negligence and holding that such an indemnity clause did not violate public policy).

■ Here, the clauses on which Udolf relies to bar Western Alliance's claims of negligence and nuisance are broadly drafted and exempt Udolf from liability for loss, damage or theft of Lloyds's property caused by any act or omission of Udolf. Based on *Burkle, supra,* the clauses exempt the landlord from liability for his own negligence. However, being so broadly written, they could also be read as exonerating the landlord from conduct constituting gross negligence, recklessness and intentional conduct. But, because they do not conspicuously, clearly and unequivocally isolate the landlord from liability for such conduct, and because it does not appear that the Connecticut Supreme Court would uphold such a broad exculpatory provision under the circumstances presented here, the clauses should not be deemed a valid limitation of Udolf's liability for gross negligence, recklessness and intentional acts. *See Griffin,* 187 Conn. at 188, 446 A.2d 799; *see also Tremblay v. Theiss,* 543 N.Y.S.2d at 574–75.

■ Here, the factual allegations in the complaint could support a finding by the trier of fact that Udolf's conduct constitutes gross negligence, *see V.P. Enterprises, Inc. v. A.J.T. Burglar Alarm Systems, Inc.,* No CV–91–03311773, 1993 WL 393840 (Conn. Superior Ct. Sept. 20, 1993), and/or that Udolf intentionally created the alleged nuisance. *See Hansen v. Huntington Realty, Inc.,* 1996 WL 57019 (Conn.Super.Ct. Jan.25, 1996) (citing Restatement (Second) of Torts § 822). In that event, the clauses would not exonerate Udolf. Accordingly, it is not appropriate to grant summary judgment in Udolf's favor on the grounds that Western Alliance's claims against it are barred by the exculpatory clauses in the lease.

### III. *Conclusion*

For the foregoing reasons, Wells Fargo's motion for summary judgment (doc. # 7) and Udolf's motion for summary judgment (doc. # 15) should be DENIED.

Either party may seek the district judge's review of this recommendation. See 28 U.S.C. § 636(b) (written objections to ruling must be filed within ten days after service of same); F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; *Thomas v. Arn,* 474 U.S. 140, 155, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992) (failure to file timely objection to Magistrate Judge's recommended ruling waives any further review of the ruling).

DATED: New Haven, Connecticut.

Sept. 30, 1996.