[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Hartford, standing in the shoes of its insured, brought a negligence claim against the defendant Larry St. Pierre, who was driving the vehicle that struck the plaintiff's insured in the rear of her vehicle. The defendant then filed an interpleader action against Liberty Mutual Insurance Company, which had allegedly insured his vehicle and had denied coverage.
For the reasons set forth below, the court finds that Larry St. Pierre was at fault in the motor vehicle accident. The court enters judgment against him in the amount of $10,500.00. On the third-party complaint, the court further finds that equity compels the finding that liability insurance was in place by Liberty Mutual Insurance Company on Mr. St. Pierre's vehicle. The court finds in favor of the third-party plaintiff and enters judgment against the third-party defendant in the amount of $10,500 with an offset for the unpaid portion of the yearly premium on Mr. St. Pierre's vehicle. The court defers decision on the claim for legal fees in the third-party complaint until further hearing.
1. THE FIRST-PARTY ACTION
The parties stipulated to the following facts, which the court finds:
On April 2, 1998, the plaintiff's insured, Susan Thibodeau, was in her motor vehicle stopped at a traffic light in Hartford, when it was struck in the rear by a car driven by the defendant Larry St. Pierre. As a result of this accident, there was property damage to her car and she suffered personal injuries for which she received medical treatment. The property damage was $353.40, of which the plaintiff paid $103.40 and $250 was Ms. Thibodeau's deductible under the policy. Plaintiff paid Ms. Thibodeau $10,500 under the uninsured motorist coverage of its policy and all of her rights against the defendant have been assigned to the plaintiff.[1]
The court further finds from the evidence that Ms. Thibodeau suffered neck, mid-back and low back pain in the incident and the next day, she sought chiropractic treatment for her pain and discomfort. The cost of her treatment, which lasted for four months, was $4,975.00. Due to her pain, she was not able to return to work for two days and lost wages of $236.50. She sustained, according to her medical care provider, a 5 percent permanent partial impairment to her lumbar spine.
The court finds that the defendant was negligent in the operation of his motor vehicle that day, when his foot slipped off the break and he rolled forward and bumped the Thibodeau vehicle. The court finds that the allegations concerning his negligence have been established by a preponderance of the evidence.
ORDER RE FIRST-PARTY COMPLAINT
The court enters judgment in favor of the plaintiff, The Hartford Insurance Company against the defendant Larry St. Pierre in the amount of $10,500.00
2. THIRD-PARTY COMPLAINT
The crux of this case, however, centers on the third-party complaint brought by Larry St. Pierre against Liberty Mutual Insurance Company, hereafter referred to as Liberty Mutual. In it, he claims the 1984 Mercury he was driving the day of the accident was insured by Liberty Mutual pursuant to Policy #A02-212-197311-117 5, that he made demand on Liberty Mutual pursuant to the policy, since he may be liable in the action brought against him by The Hartford, as indeed the court has now found. The central issue is whether or not there was a policy in effect insuring the vehicle on April 2, 1998.
 A. FACTS
From the evidence presented at trial, the court finds that the following facts were established. On the day of the accident, Mr. St. Pierre was in possession of an automobile insurance identification card listing the 1984 Mercury bearing vehicle identification number IMEBP7935EF601188, which listed the effective dates of the policy from October 7, 1997 to one year later on October 7, 1998. The card was in his name and that of his present wife, then his girl friend, Quamanic Baker.
It is Ms. Baker who originally contacted Chris Main, an insurance agent, for coverage for her Ford Escort and Mr. Pierre's Mercury shortly before the previous year's policy with Atlantic Casualty was to expire. She filled out an application in her name with the relevant information and was told that Larry St. Pierre should come to the office to add the other car to the new policy.
Larry St. Pierre contacted the insurance agency from the Department of Motor Vehicles when he was attempting to register his Mercury soon after. An insurance identification card was apparently faxed over in order to complete his registration. Exactly when Larry personally went to the insurance office is unclear, but when he was stopped in the fall of 1997 by a policeman in a routine traffic check, he was notified that, although the insurance card had the Mercury as a listed vehicle, his name was not listed on the card. He went to the office and secured the corrected card, which is now an exhibit before the court listing both names and both cars as insured by Liberty Mutual.
Liberty Mutual has denied coverage and in support of its claim produced a policy with a declaration page only listing the Ford Escort and Ms. Baker as the insured. Ms. Baker does not recall receiving a copy of the policy or noticing that only one car was insured. Ms. Baker admits that she paid premiums totaling $614.00 for the insurance coverage. She could not recall whether a quote for both cars of $1067.00 had been given to her prior to the time she signed the application and paid the first installment of the $614.00 premium cost. She stated that she got a bill for the insurance in both names and assumed since Larry had his card, that both cars were insured. She stated that had additional bills been sent, she would have paid them and was not attempting to secure liability coverage without payment.
Also in evidence is the declaration page of the policy that Liberty Mutual issued to Larry St. Pierre on April 22, 1998 through the end of the policy period of October 8, 1998. Mr. St. Pierre testified that, when he learned that Liberty Mutual claimed to have no coverage for his vehicle, he then paid additional premiums to make certain he had insurance coverage.
Chris Main, the agents could not recall when or whether Larry St. Pierre came to his office and could not explain how Mr. St. Pierre came to be in possession of a insurance card listing the 1984 Mercury as an insured vehicle with the policy dates of October 7, 1997 to October 7, 1998. He was aware that after the motor vehicle accident on April 4, 1998 when Mr. St. Pierre was added to the policy declaration page, a second card with the policy dates for the remainder of the policy year. He did note that it is office procedure for the file the agency maintains on its customers to be reviewed by a service representative in the office before the policy is issued.
 B. DISCUSSION
The third-party plaintiff, Larry St. Pierre argues that he went to Liberty Mutual seeking insurance and they issued him an insurance card listing his name and his vehicle with the proper vehicle identification number. He argues that, as between the two parties, it is an equitable issue and that Liberty Mutual should now be estopped from raising the issue of coverage. Larry St. Pierre did what he was supposed to do and relied on what he received from the insurance company. He claims that the insurance company, who knew all of the requirements for the issuance and cancellation of liability policies, should admit it made a mistake and provide coverage and attorney's fees for the defense of the first-party action and for the action against it, as such representation is part of any policy of motor vehicle insurance. The third-party defendant counters by raising credibility questions and relying on its policy and declaration pages, as well as the payment of a lower premium.
The court finds both Quamanic Baker and Larry St. Pierre to be credible witnesses. The court is not persuaded that Mr. St. Pierre's purchase of additional coverage after the motor vehicle accident is an admission that he knew he did not have insurance coverage earlier, but rather a rational and proper act, once he was alerted to the insurance company's position. The court further notes that the thirty-party defendant has no explanation as to how the insurance card in Mr. St. Pierre's position came to be issued.
 1) Equitable Estoppel
"There are two essential elements to an estoppel — the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done. Further, [i]t is the burden of the person claiming the estoppel to show that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. [T]here must gene rally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury. . . . The modern estoppel in pais is of equitable origin, though of equal application in courts of law. . . . Its office is . . . to show what equity and good conscience require, under the particular circumstances of the case. . . . Estoppel is rooted in the principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. Estoppel is to protect the innocent and is based on fair dealing and principles of morality. . . . [C]ourts, applying equitable principles, have laid down the doctrine of equitable estoppel by which a defendant may be estopped by his conduct from asserting [statutory] defenses. . . . (Internal quotations and citation omitted.) Green v. Conn. Disposal SVC., Inc., 62 Conn. App. 83, 91, 77 A.2d ___ (2001).
The court finds that all elements of equitable estoppel have been proven in this case. The third-party plaintiff, Larry St. Pierre, took the steps he thought were necessary to secure liability insurance coverage for his motor vehicle and indeed secured a certificate of insurance demonstrating to the department of motor vehicles that he had insurance for the policy period listed. The court finds that both he and Ms. Baker acted in good faith. The court finds, from the evidence, that the agent Chris Main and his agency were grossly negligent in not following up the documentation they had and issuing a policy or endorsement with the second car on it. Whatever steps they were required to take to place the proper endorsements on Ms. Baker's policy and to issue the additional billing they failed to take. No one prevented them from doing this. They were in a position of superior knowledge concerning the requirements for insurance and their own obligations to their customers.
 2) The identification card as binder
It is also plausible to view the identification card, without which an individual cannot register an automobile and legally drive it on the public highways of this state, as a form of binder. In this case, the court finds from the evidence that sometime in the month of October, 1997, Chris Main as agent for Liberty Mutual, issued the identification card and through it, asserted that there was motor vehicle liability coverage. Further, "in General Statutes 38a-343a, the legislature provided that insurance companies, on a monthly basis, must notify the commissioner of motor vehicles of the "cancellation" of all previously issued automobile policies which occurred during the preceding month. The commission is then required to use that information to determine whether the cancelled insured has maintained the legally required insurance coverage. The evident purpose of this statute is to facilitate the suspension of motor vehicle registrations for failure to maintain insurance." Munroe v. Great American Insurance Co., 234 Conn. 182, 192,661 A.2d 581 (1995).
Having issued the card, Liberty Mutual thus had an obligation to provide notice of cancellation to the Department of Motor Vehicles and to Larry St. Pierre. The court also notes one further underlying purpose of the state's regulatory scheme is to ensure that members of the public, injured by others traveling the highways, are able to secure compensation from those who have injured them. Had the third-party defendant in this case billed Larry St. Pierre in the proper fashion for the coverage it purported to provide him by issuing the identification card and had he failed to pay, this is the step Liberty Mutual would have taken to insure that it could assert there was no liability coverage in place in this instance. Because of its agent's failure to complete the necessary internal paperwork, Liberty was not in a position to provide such notice of cancellation and to carry out its own obligations under our statutes.
For the foregoing reasons, the court finds that there was insurance in force, which had not been cancelled. Principles of equity require the imposition of this obligation upon Liberty Mutual.
ORDER RE THIRD-PARTY COMPLAINT
Judgement is entered in favor of the third-party plaintiff, Larry St. Pierre, against the defendant Liberty Mutual in the amount of $10,500 with a set off for the unpaid portion of the insurance premium from October 10, 1997 through April 22, 1998.
3. LEGAL FEES
As to the legal costs of the defense of the first-party action and the costs of enforcing the claim for insurance, the court directs the third-party plaintiff to file a motion for such fees with appropriate documentation and the court will defer judgment on this portion of the claim until a further hearing can be held.
BY THE COURT
BARBARA M. QUINN, Judge