# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 02-2867

_____

Mary Sue Shipley, Personal     *
representative of the Estate of     *
William D. Shipley, Jr., deceased,     *
    *  Appeal from the United States
              Appellant,     *  District Court for the
    *  Eastern District of Arkansas.
       v.     *
    *
Arkansas Blue Cross and Blue     *
Shield, a mutual insurance     *
company,     *
    *
              Appellee.     *

_____

Submitted: January 17, 2003
Filed: June 30, 2003

_____

Before HANSEN,[1] Chief Judge, BOWMAN and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable David R. Hansen stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 31, 2003. He has been succeeded by the Honorable James B. Loken.

Appellant Mary Sue Shipley appeals the final judgment entered by the district court[2] in favor of Arkansas Blue Cross and Blue Shield ("ABCBS"), upholding ABCBS's denial of benefits.  We affirm the judgment of the district court.

I.

On April 5, 2000, William Shipley completed an enrollment form to obtain health insurance through his employer's benefit plan ("the Plan") administered by Appellee ABCBS.  On the form, Shipley answered a number of questions about his medical history.  Specifically, he answered "no" to the following questions:

> Has any person applying for coverage ever had a known indication of or been treated by a physician for:
>
> 1.  Chest pain, high blood pressure, shortness of breath, stroke, dizziness, peripheral vascular disease, varicose veins or ulcers, or any other disorder of the heart and circulatory system?
>
> . . . .
>
> 3.  Tuberculosis, emphysema, C.O.P.D., asthma, or any disorder of the sinuses, lungs, respiratory system?
>
> . . . .
>
> 11.  Have you . . . had any diagnosis, medical treatment, mental or physical impairment, condition or congenital anomaly not mentioned above?
>
> . . . .

---

[2]The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

16. Is any person taking medication prescribed by a physician?
If YES, give name of person, medication, and dosage.

(Appellant's Add. at 11.) Shipley then signed the form which represented that "the statements and answers given in th[e] application [were] true, complete and correctly recorded to the best of [his] knowledge and belief. . . ." (Id.)

On August 28, 2000, after a number of doctor visits relating to respiratory problems, Shipley was diagnosed with cancer and chronic obstructive pulmonary disease ("C.O.P.D."), or emphysema. After investigating Shipley's medical records, ABCBS rescinded his insurance coverage retroactive to its effective date because he had not fully disclosed his medical history. In its letter rescinding coverage, ABCBS noted that Shipley had made a number of doctor visits for related symptoms that he had failed to disclose in his application form, and that ABCBS would have rated the policy differently had Shipley disclosed that information. Specifically, ABCBS noted that: (1) Shipley was seen and treated for chest congestion and an upper respiratory infection on April 7, 1997, and was prescribed Keflex to treat the condition; (2) Shipley was seen and treated for a sinus infection and cough on September 20, 1999, and was diagnosed with acute sinusitis; (3) Shipley was seen and treated for acid reflux and sleep difficulties on November 19, 1999, and after an X-ray revealed expiratory wheezing, he was diagnosed with asthmatic bronchitis for which the doctor prescribed several medications; and (4) on January 21, 2000, Shipley's doctor prescribed an additional drug be added to Shipley's medications.

Shipley appealed ABCBS's rescission decision via letter dated April 6, 2001, but failed to submit any additional evidence. ABCBS denied Shipley's appeal. Shipley then filed this action in district court.[3] The district court granted ABCBS's

---

[3]The district court noted, and the parties do not dispute, that the Plan is governed by ERISA and that the action was brought under 29 U.S.C. § 1132 (a)(1)(B) (providing for judicial review of the denial or refusal to pay plan benefits).

motion for a protective order and determined that the case would be decided on the administrative record under an abuse of discretion standard. The court then granted ABCBS's motion for summary judgment, finding that ABCBS did not abuse its discretion in rescinding the policy because there was substantial evidence that Shipley had misrepresented his medical history.

Shipley filed this appeal, arguing that the district court erred in applying an abuse of discretion standard of review and in concluding that ABCBS's decision was supported by substantial evidence. After Shipley's death on November 14, 2002, his wife, Mary Sue Shipley, was appointed Personal Representative of his estate. Pursuant to Federal Rule of Appellate Procedure 43(a)(1), this court substituted Mary Sue Shipley as the proper party on appeal.

II.

This court reviews de novo the grant of summary judgment, applying the same standard as the district court. See Delta Family-Care Disability and Survivorship Plan v. Marshall, 258 F.3d 834, 840-41 (8th Cir. 2001) (reviewing de novo district court's application of abuse of discretion standard in its review of an ERISA plan administrator's decision to terminate benefits), cert. denied, 534 U.S. 1162 (2002). Therefore, if the district court was required to review ABCBS's decision for an abuse of discretion, this court does the same. Under an abuse of discretion standard, this court must determine whether ABCBS's "decision was reasonable; i.e., supported by substantial evidence." Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotations omitted).

Appellant argues that the district court should have reviewed ABCBS's decision de novo. The district court specifically rejected this argument and concluded

that because the Plan expressly grants the administrator discretionary authority to determine eligibility for benefits,[4] the Supreme Court's decision in <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989), required that it limit its review of the administrator's decision to an abuse of discretion. Although Appellant argued that the enrollment form is not part of the Plan, the district court cited to an integration clause that clearly makes the enrollment form one of the documents that ABCBS has discretionary authority to review. (Appellant's Add. at 19 ("The entire contract of insurance is made up of this policy . . . . The individual applications also become part of this contract.").) Appellant fails to address the integration clause and instead merely concludes that the enrollment form is not part of the plan and that <u>Bruch</u> does not apply. Because we agree with the district court's findings that the Plan grants discretion to ABCBS and that the enrollment form was integrated into the Plan, <u>Bruch</u> applies, and we reject Appellant's argument that a de novo standard of review was and is required. <u>See</u> <u>Tillery v. Hoffman Enclosures, Inc.</u>, 280 F.3d 1192, 1196-97 (8th Cir. 2002).

## III.

The district court correctly noted that although the Plan is governed by ERISA, there is no ERISA section that discusses the availability of rescission by an insurer in response to misrepresentations in a health insurance application. Therefore, federal common law controls in this case. <u>See</u> <u>McDaniel v. Med. Life Ins. Co.</u>, 195 F.3d 999,

---

[4]The policy provides that "[t]he Company acting on behalf of the Plan shall have authority and full discretion to determine all questions arising in connection with the Employee's insurance benefits, including but not limited to eligibility, interpretation of Plan language, and findings of fact with regard to any such questions." (Appellant's App. at 120.) We have found that similar language vests the plan administrator with discretionary authority sufficient to evoke the <u>Bruch</u> abuse of discretion standard. <u>Cf.</u> <u>Marshall</u>, 258 F.3d at 840 n.9; <u>Cash v. Wal-Mart Group Health Plan</u>, 107 F.3d 637, 641 n.3 (8th Cir. 1997).

1002 (8th Cir. 1999) (noting that without a governing ERISA provision, federal common law controls); Mohamed v. Kerr, 53 F.3d 911, 913-14 (8th Cir.) (same), cert. denied, 516 U.S. 868 (1995); Anderson v. John Morrell & Co., 830 F.2d 872, 877 (8th Cir. 1987) (noting that courts should fashion federal substantive law to fill in gaps in ERISA's express provisions); see also 29 U.S.C. § 1144(a) (2000) (preempting state law in cases involving employee benefit plans); Tingle v. Pac. Mut. Ins. Co., 996 F.2d 105, 107-110 (5th Cir. 1993) (holding that state statute regarding misrepresentations in insurance applications is preempted by ERISA, and that in the absence of a specific ERISA provision, federal common law controls). In developing federal common law, we may look to state law for guidance to the extent that state law does not conflict with ERISA or its underlying policies. See McDaniel, 195 F.3d at 1002; Mohamed, 53 F.3d at 913.

In looking to state law, federal courts cannot simply decide what one particular state or a majority of the states has done in similar situations. Rather, federal courts create federal common law by adopting and applying the common law principles that further the policy considerations underlying ERISA. See Singer v. Black & Decker Corp., 964 F.2d 1449, 1453 (4th Cir. 1992). After considering the policy implications in this case, we, like a number of our sister circuits, conclude that federal common law allows for the equitable rescission of an ERISA-governed insurance policy that is procured through the material misstatements or omissions of the insured. See, e.g., Sec. Life Ins. Co. of Am. v. Meyling, 146 F.3d 1184, 1191 (9th Cir. 1998) (finding that "ERISA must provide a rescission remedy when an insured makes material false representations regarding his health"); Davies v. Centennial Life Ins. Co., 128 F.3d 934, 943-44 (6th Cir. 1997) (adopting general principles of contract law to determine the effect of a misrepresentation in an insurance application governed by ERISA); Hauser v. Life Gen. Sec. Ins. Co., 56 F.3d 1330, 1333-35 (11th Cir. 1995) (assuming that a right of rescission exists under ERISA-created federal common law); Nash v. Trustees of Boston Univ., 946 F.2d 960, 966-67 (1st Cir. 1991) (recognizing fraud in the inducement as a defense under federal common law interpreting ERISA); see

6

also <u>Tingle v. Pac. Mut. Ins. Co.</u>, 837 F. Supp. 191, 193 (W.D. La. 1993) (ascertaining, on remand, the proper federal common law approach).

This rule is consistent with general contract and insurance law principles, <u>see</u> Restatement (Second) of Contracts, § 164(1) (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."); <u>see also</u> <u>Stipcich v. Metro. Life Ins. Co.</u>, 277 U.S. 311, 316 (1928) ("Insurance policies are traditionally contracts <u>uberrimae fidei</u> and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option."); <u>Countryside Cas. Co. v. Orr</u>, 523 F.2d 870, 872 (8th Cir. 1975) ("Under the common law, a material misrepresentation made on an application for an insurance policy and relied upon by the insurance company will void the policy. <u>See</u> 12 J. Appleman, Insurance Law and Practice §§ 7293- 97 (1943)."), and is followed by a majority of the states, <u>see, e.g.</u>, <u>Methodist Med. Ctr. of Ill. v. Am. Med. Sec. Inc.</u>, 38 F.3d 316, 320 (7th Cir. 1994) (Illinois law); <u>John Hancock Mut. Life Ins. Co. v. Weisman,</u> 27 F.3d 500, 504 (10th Cir. 1994) (New Mexico law); <u>Stephens v. Guardian Life Ins. Co. of Am.</u>, 742 F.2d 1329, 1332-33 (11th Cir. 1984) (Alabama law); <u>Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.</u>, 655 F.2d 598, 602 (5th Cir. 1981) (Georgia law); <u>Soanes v. Empire Blue Cross/Blue Shield</u>, 970 F. Supp. 230, 243 (S.D.N.Y. 1997) (New York law); <u>White v. Cont'l Gen. Ins. Co.</u>, 831 F. Supp. 1545, 1553-54 (D. Wyo. 1993) (Wyoming law); <u>Royal Am. Mgrs., Inc. v. Int'l Surplus Lines Ins. Co.</u>, 760 F. Supp. 788, 792 (W.D. Mo. 1991) (Missouri law); <u>Cohen v. Penn Mut. Life Ins. Co.</u>, 312 P.2d 241, 244 (Cal. 1957); <u>Munroe v. Great Am. Ins. Co.</u>, 661 A.2d 581, 584 n.4 (Conn. 1995); <u>Cont'l Assurance Co. v. Carroll</u>, 485 So.2d 406, 409 (Fla. 1986); <u>Bennett v. CrownLife Ins. Co.</u>, 776 N.E.2d 1264, 1269-70 (Ind. Ct. App. 2002); <u>Cont'l Cas. Co. v. Pfeifer</u>, 229 A.2d 422, 426-27 (Md. 1967); <u>Pahigian v. Mfrs. Life Ins. Co.</u>, 206 N.E.2d 660, 665 (Mass. 1965); <u>Taylor v. Metro. Life Ins. Co.</u>, 214 A.2d 109, 112 (N.H. 1965); <u>Tolbert v. Mut. Ben. Life Ins. Co.</u>, 72 S.E.2d 915, 917 (N.C. 1952); <u>Indus. Comm'n of N.D. v.</u>

McKenzie County, 518 N.W.2d 174, 177 (N.D. 1994); Guardian Life Ins. Co. of Am. v. Tillinghast, 512 A.2d 855, 859 (R.I. 1986). While we recognize that some states have altered the common law rule to require proof of fraudulent intent or bad faith in addition to materiality to rescind an insurance policy based on misrepresentations, see, e.g., Hays v. Jackson Nat'l Life Ins. Co., 105 F.3d 583, 587 (10th Cir. 1997) (Oklahoma law); Parsaie v. United Olympic Life Ins. Co., 29 F.3d 219, 220 (5th Cir. 1994) (Texas law); Van Enters., Inc. v. Avemco Ins. Co., 231 F. Supp. 2d 1071, 1090 (D. Kan. 2002) (Kansas law); Van Riper v. Equitable Life Assur. Soc. of U.S., 561 F. Supp. 26, 30 (E.D. Pa. 1982) (Pennsylvania law), aff'd, 707 F.2d 1397 (3d Cir. 1983); Coleman v. Occidental Life Ins. Co. of N.C., 418 So.2d 645, 646 (La. 1982) (Louisiana law); Zimmerman v. Cont'l Cas. Co., 150 N.W.2d 268, 271-72 (Neb. 1967), we find that the majority approach is the most logical and equitable alternative to further ERISA's principal goal of creating uniform, objective standards and to facilitate the availability and affordability of health insurance. Additional competing policy considerations relevant to the issue are more properly addressed in the legislative process. Therefore, until Congress indicates otherwise, we hold that a misrepresentation as to a material matter made knowingly in an application for an ERISA-governed insurance policy is sufficient to rescind the policy.

Given the federal courts' authority under ERISA to create a uniform body of federal common law, see Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 156 (1985) (Brennan, J., concurring), we do not agree with the district court's assumption that the Arkansas statute, Ark. Code Ann. § 23-79-107(a) (Michie 1992), automatically controls in the absence of an explicit ERISA provision. Nevertheless, because the Arkansas statute is consistent with the federal common law approach discussed above, we agree with the district court that the proper inquiry in this case is whether Shipley's answers on the enrollment form were material misrepresentations. Appellant does not dispute this analysis but asserts that Shipley's answers were neither false nor material.

8

## A. Misrepresentations

A misrepresentation is a statement of fact that is untrue or a failure to disclose a fact in response to a specific question. Appellant argues that Shipley's answers on the enrollment form were not misrepresentations because the form only required the applicant to use a subjective standard in answering the questions, and that ABCBS failed to present any evidence that Shipley's answers were not "true, complete and correctly recorded to the best of [his] knowledge and belief," (Appellant's Add. at 11). Appellant asserts that ABCBS abused its discretion in rescinding Shipley's benefits without investigating his subjective beliefs regarding his medical history or presenting evidence that he actually believed the statements were incorrect. In concluding that there was substantial evidence to support ABCBS's finding that Shipley knew that he gave inaccurate answers on the application form, the district court noted that Shipley offered no evidence in support of his claimed lack of knowledge. Appellant asserts that the district court impermissibly shifted the burden of producing evidence that Shipley's statements were false from ABCBS to Shipley.

In its letter rescinding the benefits, ABCBS clearly stated that it was relying on Shipley's medical records as evidence that he made material misrepresentations on his enrollment form. Essentially, ABCBS reasoned that because Shipley was aware that he needed medical attention, because he sought that attention, because he received the diagnoses from the doctors, and because he was prescribed medication, he must have known something about his conditions. Cf. Hauser 56 F.3d at 1332, 1335 (remanding for a factual determination of whether a husband was justified in his answers about his wife's health conditions). ABCBS asserted that the enrollment form did not require interpretation of facts and circumstances known, but rather requested simple disclosure of historical facts. Cf. Ellis v. Great-West Life Assur. Co., 43 F.3d 382, 388 (8th Cir. 1994) ("The question asked 'have you ever had' the various conditions; the question did not ask the applicant to respond in the affirmative only if the applicant felt the condition presented a serious health threat . . . . [W]hen

9

questions are worded in this manner, the facts must be revealed. The insurance company, not the insured, assesses the significance of the facts."); Jackson v. Prudential Ins. Co. of Am., 736 F.2d 450, 453 (8th Cir. 1984) (finding that an insurance applicant's negative answer to question as to whether he had received an electrocardiogram for chest pain or for any other physical complaint was in fact incorrect, regardless whether the applicant honestly believed that his physical discomfort was due to an ulcer). Citing Arkansas caselaw, ABCBS noted that "[t]he standard of truthful answers for such questions is measured by whether the individual answering the question was justified in the belief expressed," (Appellant's Add. at 17-18) and concluded that in light of his medical records, Shipley was not justified in believing that his answers were truthful.

The district court gave Shipley an opportunity to rebut this evidence, but he failed to produce anything. Appellant argues that this was impermissible burden-shifting, but this argument is without merit. If Shipley's medical records served as substantial evidence that he was aware of his conditions, then the district court did not impermissibly shift the burden to Shipley, but rather gave him a fair opportunity to rebut the already-sufficient evidence against him. The district court did not uphold ABCBS's rescission because Shipley failed to produce evidence in the first instance. Rather, it upheld ABCBS's rescission because ABCBS put forth substantial evidence that Shipley knowingly omitted material information from his application form. Even if Shipley somehow believed that his answers were true, ABCBS did not abuse its discretion in concluding that the medical records demonstrated that Shipley knew his answers were false. Cf. Skinner v. Aetna Life & Cas., 804 F.2d 148, 151 (D.C. Cir. 1986) ("[T]he twin qualifiers [knowledge and belief] require[ ] that knowledge not defy belief . . . . What the applicant in fact believed to be true is the determining factor in judging the truth or falsity of his answer, but only so far as that belief is not clearly contradicted by the factual knowledge on which it is based. In such event, a court may properly find a statement false as a matter of law, however sincerely it may be believed."). Because Shipley was not justified in believing his answers to be true,

we agree with the district court that, as a matter of law, his statements on the enrollment form were misrepresentations and that ABCBS's decision to rescind Shipley's coverage based on the information in the medical records was reasonable.

## B. Materiality

In cases governed by ERISA, misstatements or omissions have been deemed material where knowledge of the true facts would have influenced the insurer's decision to accept the risk or its assessment of the premium amount. See Meyling, 146 F.3d at 1191-92; Davies, 128 F.3d at 943-44; Hauser, 56 F.3d at 1333-34; accord Ark. Code Ann. § 23-79-107(a)(3), (c); see also 6 Couch on Insurance § 82:13 (3d ed.) ("Broadly speaking, the test of materiality is whether the fact or circumstance represented or misrepresented operated to induce the insurer to accept the risk, or to accept it at a lower premium."). In its letter denying Shipley's appeal, ABCBS stated that Shipley's answers were material because ABCBS would have rated the plan differently had it known the true facts up front. Appellant argues that ABCBS failed to present substantial evidence that the statements were material. Citing to documents in the record, the district court found that the statements were material.

ABCBS cites its underwriting guidelines related to C.O.P.D. to prove that it would have treated Shipley's application for insurance benefits differently had it known about his medical history. (Appellant's App. at 396-99, 445-46.) Appellant argues that Shipley was not diagnosed with C.O.P.D. until after executing the application, and therefore ABCBS cannot rely on the C.O.P.D. guidelines to prove materiality. Nevertheless, the guidelines define the risk factors for C.O.P.D broadly enough to include a number of the symptoms, risk factors, and diagnoses that Shipley was aware of before he completed the enrollment form. Furthermore, the fact that the questions were contained in an application form that clearly limited coverage for preexisting conditions indicates that Shipley's answers to those questions were relevant for determining the extent of his coverage and his premium amounts.

IV.

Accordingly, we affirm the district court's grant of summary judgment in favor of ABCBS.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.