# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2818

_____

Kenny J. Werdehausen; Anita     *
Werdehausen,     *
    *
    Plaintiffs - Appellants,     *     Appeal from the United States
    *     District Court for the
    v.     *     Eastern District of Missouri.
    *
Benicorp Insurance Company,     *
    *
    Defendant - Appellee.     *

_____

Submitted: December 13, 2006
Filed: May 29, 2007 **(Corrected 6/6/07)**

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

Kenny Werdehausen had neck surgery and submitted a benefits claim under his employer's group health plan reflected in an insurance policy issued by Benicorp Insurance Company. In reviewing the claim, Benicorp discovered that Werdehausen had failed to disclose the need for neck surgery in his policy enrollment application. Benicorp determined that this was a material misrepresentation because disclosure would have increased the employer's group health policy premium by $2,000 per month (the estimated cost of the surgery spread over two years). Benicorp retroactively rescinded Werdehausen's enrollment and denied all pending claims for plan benefits submitted by Werdehausen and his wife. The Werdehausens sued.

After Benicorp removed their state court action, the Werdehausens filed an amended complaint seeking to recover plan benefits under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.; and alleging that Benicorp violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub. L. No. 104-191, 110 Stat. 1936, by engaging in health status discrimination, and violated the Missouri Health Care Utilization Review Act (MHCURA), Mo. Rev. Stat. § 376.1361(13), by denying insurance coverage for preauthorized medical treatment. The district court granted Benicorp summary judgment on the ERISA claims, dismissed the HIPAA claim, and held the MHCURA claim preempted by ERISA. The Werdehausens appeal. We reverse.

## I. Background

Werdehausen became a participant in the group health plan in 1994. His employer changed insurers to Benicorp at the end of 2002. To remain participants, Werdehausen and other employees had to complete Benicorp's enrollment application form. The form required disclosure of Werdehausen's medical history, including any condition that he knew might require surgery -- information Benicorp's underwriters then used in setting the group health policy premium, 75% of which was paid by the employer. The form stated that Werdehausen's answers must be "true and complete" and warned that "misstatements or omissions of information may be basis for denying payment of a claim or voiding coverage entirely." Werdehausen's November 13, 2002, application disclosed that he had undergone lower back surgery in April 2002 but did not disclose that a doctor told him on October 29, 2002, that he would eventually need surgery for a herniated disc in his neck. Werdehausen claims the non-disclosure was innocent; he expected Benicorp to obtain his full medical records from the doctor listed in the application.

When Werdehausen submitted a claim to recover the costs of his neck surgery, Benicorp obtained and thoroughly reviewed his prior medical records from various

medical providers. These records revealed that Werdehausen was first treated for neck pain in September 2000, was advised in March 2002 that he needed neck surgery but elected to have back surgery first, and was again advised in October 2002 that he would eventually need neck surgery.

Benicorp's lengthy group policy included the following General Provisions:

> **STATEMENTS - MISSTATEMENTS.** . . . . If an Insured Employee's or Insured Person's misstatement of facts affects his/her amount or type of insurance, the truth shall be used in deciding the coverage in force, if any. Premiums and/or benefits may be adjusted to reflect premium and/or coverage for the age or medical condition of the Insured Person.

* * * * *

> **TERMINATION FOR . . . MATERIAL MISSTATEMENTS**
>
> . . . . We reserve the right to terminate the coverage of an Insured Person who has made a material misstatement in their Group Enrollment Form.

The Certificate Book provided to Werdehausen also contained these provisions. On August 5, 2003, Benicorp sent Werdehausen a letter reviewing his medical history in detail and concluding:

> Had your actual medical history been revealed in the application for insurance . . . the coverage for your employer group would have been issued at a higher premium rate. Therefore . . . your coverage . . . has been rescinded . . . pursuant to our rights as set forth in the application for insurance, the Policy and the certificate booklet. . . . The result of this action is to void your coverage back to the effective date, as though it was never in effect. Consequently, no benefits are payable for any expenses incurred by your family.

Werdehausen timely appealed this decision. Benicorp's Claim Review Committee affirmed and advised Werdehausen of its adverse decision in a lengthy letter dated September 12, 2003.

## II. The ERISA Standard of Review Dispute

The group health policy granted Benicorp discretionary authority to interpret the policy and determine eligibility for benefits. Such a plan provision normally triggers judicial review of a benefits denial under a deferential abuse-of-discretion standard. However, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (quotation omitted). To obtain the advantage of less deferential review, the claimant must show a "palpable" financial conflict of interest that "has a connection to the substantive decision reached" and raises "serious doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." Sahulka v. Lucent Techs., Inc., 206 F.3d 763, 768 (8th Cir. 2000) (quotations omitted).

In the district court, the Werdehausens argued that Benicorp operated under such a conflict of interest. The district court properly allowed discovery on this issue. The Werdehausens deposed Brad Meyers, Benicorp's claim review manager who signed the two letters advising of the adverse claim decision. Meyers testified:

> Q So the insurance policy says that you can, in the case of a misstatement, amend or revise the premium retroactively; is that correct?
>
> A The Werdehausen policy says that premiums . . . may be adjusted to reflect . . . the age or medical condition of the insured person. So we do have the option to adjust the premium . . . .

Q However, the company practice and policy is that you never adjust the premium; is that correct?

A The current company policy is that we do not, yes.

Q And was that the policy that was in effect at the time the Werdehausen case was handled?

A Yes.

Q So in the process of handling the Werdehausen case, neither you nor anybody else with Benicorp ever considered adjustment of premium?

A No. We followed company policy and performed the rescission.

The district court concluded that Benicorp had a financial conflict of interest but was nonetheless entitled to deferential review because the Werdehausens failed to prove that the conflict of interest caused a breach of fiduciary duty. Consistent with abuse-of-discretion review, the court then limited its review of the merits of Benicorp's decision to the administrative record before the claims administrators.

## III. The ERISA Claims

The parties raise many complex issues on appeal. But in our view the problem boils down to a relatively focused issue of ERISA law that in turn reveals a genuine issue of disputed fact precluding the grant of summary judgment on this record.

In Shipley v. Arkansas Blue Cross & Blue Shield, 333 F.3d 898 (8th Cir. 2003), an employee enrolled in his employer's benefit plan and failed to disclose repeated prior treatments for symptoms of emphysema. Some months later, when the employee was diagnosed with cancer and emphysema, the insurer rescinded the policy and the employee sued. We joined other circuits in concluding that "federal common law allows for the equitable rescission of an ERISA-governed insurance policy that is

procured through the material misstatements or omissions of the insured." 333 F.3d at 902. Applying the abuse-of-discretion standard of review, we upheld the insurer's decision to rescind the policy because the application form "clearly limited coverage for preexisting conditions" and therefore the non-disclosures were material in determining the extent of coverage and premium amounts. 333 F.3d at 905.

In this case, the Benicorp policy expressly authorized rescission for material misstatements in the enrollment application. In granting summary judgment dismissing the Werdehausens' ERISA claims, the district court noted that Shipley permits rescission for knowing material misstatements, even if not made with fraudulent intent. Applying the abuse-of-discretion standard of review, the court concluded that Werdehausen's non-disclosures were material because, had Benicorp known of his cervical problems, "it would have issued coverage at a significantly higher premium rate." We agree with the court's analysis of these issues, which the Werdehausens virtually concede on appeal.

However, Shipley permits but does not require retroactive rescission for innocent material non-disclosures. When the benefit plan makes alternative remedies available, the benefits decision-maker must act in accordance with its duties as an ERISA fiduciary in choosing among those remedies.[1] Here, Benicorp's claims manager testified that the policy gave Benicorp the option of retroactively increasing the premium. Yet Benicorp retroactively rescinded Werdehausen's enrollment and denied all his pending claims because, Meyers testified, it is the company's policy to rescind *in every case*, regardless of the circumstances.

That policy was likely adopted for business reasons. When the prior group health policy insuring the employer's plan expired, Benicorp competed for the

---

[1]Under ERISA, an insurer's benefit determinations are "part and parcel of the ordinary fiduciary responsibilities connected to the administration of a plan." Aetna Health Inc. v. Davila, 542 U.S. 200, 219 (2004).

renewal business. Benicorp could require employees to disclose their medical histories to remain enrolled in the plan. But unlike the facts in Shipley, see 333 F.3d at 905, HIPAA precluded Benicorp from enforcing its exclusion of preexisting medical conditions. See 29 U.S.C. § 1181(a)(3), (c)(1). Disclosure of adverse medical conditions was still important to Benicorp for underwriting purposes, because HIPAA does not "restrict the amount that an employer may be charged for coverage under a group health plan." 29 U.S.C. § 1182(b)(2)(A). The effect of HIPAA in this situation is to increase the relative cost of the plan by compelling continued health care coverage for employees who are likely to incur greater-than-average health care expenses.

As coverage for preexisting conditions was assured, enrolling employees such as Werdehausen had little reason to submit intentionally false applications to Benicorp. It is predictable in these circumstances that a certain number of employees will carelessly fail to disclose their relevant medical histories on the Benicorp enrollment form, particularly because the form provided a small blank space in which the applicant was asked to describe, for each prior treatment: "Details of medical conditions; treatment (past, current and planned), medication (past, current and planned); degree of recovery and other helpful information." After receiving the enrollment forms, Benicorp could wait to conduct a thorough review of a claimant's medical history until that employee submitted a substantial claim. Then, if a material non-disclosure was uncovered, Benicorp would *automatically* rescind the employee's coverage retroactive to its inception. Rescission increased Benicorp's profit by the amount of the claims thereby denied, offset by a smaller refund of the premium attributable to that employee. Premium refunds reduced the cost of the group health plan to the employer, Benicorp's customer.

The fortuitous business impact of this automatic rescission policy comes at the expense of the federal policy enacted in HIPAA -- it results in retroactive non-coverage of employees who are most in need of group health care coverage because

of preexisting medical conditions, when under HIPAA those employees could not have been excluded from the plan because of preexisting conditions at the time the policy issued. If an ERISA fiduciary decides to retroactively rescind an employee's coverage solely on the basis of an automatic rescission policy, when it could have recouped any loss to the plan by retroactively increasing the employer's premium, we find it hard to conceive of a more "palpable" financial conflict of interest, directly connected to the substantive benefit decision made and demonstrating that the result reached was an arbitrary exercise of the fiduciary's discretion that conflicts with its obligation to "discharge [its] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Judicial review of such a decision is therefore *de novo*. If the employee's non-disclosure was intentional, fraud would perhaps justify rescission, despite the availability of another remedy. But if the non-disclosure was inadvertent, the decision to rescind must be reversed.

However, the summary judgment record does not conclusively establish that we have accurately described the factual setting in this case. In Paragraph 8 of its Statement of Uncontroverted Material Facts in support of its motion for summary judgment to the district court, Benicorp asserted:

> 8. Notwithstanding the [premium adjustment] provision [in the policy], the Employer Application specifically limited Benicorp's right to adjust premiums under the Policy by guaranteeing the initial premium rates for the first twelve months of coverage.

This is highly relevant. Werdehausen's neck surgery occurred during the first twelve months of coverage. This provision, if applicable, would deny Benicorp the ability to provide coverage for this claim *and* retroactively adjust the premium. If a plan cannot adjust the premium to recoup the unforeseen costs of an employee's material misstatement, then retroactive rescission under circumstances permitted by Shipley *may* be the claims administrator's proper decision. However, Benicorp's assertion is not an uncontroverted fact. In response, the Werdehausens stated:

Plaintiffs Werdehausen admit that the quoted portion of the [employer] application is quoted correctly [in Benicorp's paragraph 8]. However . . . . [t]he specific application of premium adjustment authorized in the [policy] sections dealing with misstatements is an obvious exception to the general guarantee of rates in the application.

We conclude this is a material dispute that precludes the grant of summary judgment to either party on this record. Therefore, we must remand the ERISA claims to the district court to resolve the issue, applying well-established principles of ERISA plan interpretation. See Hughes v. 3M Retiree Medical Plan, 281 F.3d 786, 790 (8th Cir. 2002); Barker v. Ceridian Corp, 122 F.3d 628, 638-39 (8th Cir. 1997); Jensen v. SIPCO, Inc., 38 F.3d 945, 950 (8th Cir.), cert. denied, 514 U.S. 1050 (1994). If the premium adjustment provision applied to the Werdehausens' claims during the first twelve months of coverage, then Benicorp's reliance on its policy of automatic rescission was wrongful and the Werdehausens are entitled to an order granting relief under 29 U.S.C. § 1132(a)(1)(B), including, at a minimum, retroactive reinstatement as a covered employee and spouse and an award of monetary relief for their wrongfully denied claims. On the other hand, if the guaranteed rate provision applied, the court must determine, *de novo*, whether to uphold Benicorp's decision to retroactively rescind.

## III. Other Claims and Issues

**HIPAA.** The Werdehausens' initial state court complaint alleged that Benicorp's retroactive rescission violated the federal law mandating "portability and eligibility" of employer health plans. After removing, Benicorp moved to dismiss this claim on the ground that there is no implied private right of action under HIPAA. The district court agreed, concluding "that Plaintiffs may not maintain a private cause of action for Benicorp's alleged failure to comply with HIPAA." The Werdehausens then filed an amended complaint alleging as part of their ERISA claims that Benicorp discriminated "on the basis of health status, medical condition, claims experience,

receipt of healthcare, and medical history," the operative language in 29 U.S.C. § 1182(a)(1), one of the HIPAA provisions codified in the ERISA subchapter of Title 29. The district court granted summary judgment dismissing the ERISA claims without referring to HIPAA.

On appeal, the Werdehausens argue that 29 U.S.C. § 1182 is in the subchapter that includes ERISA's statutory remedies and therefore may be enforced by an ERISA participant's claim "to enjoin any act or practice which violates any provision of this subchapter." 29 U.S.C. § 1132(a)(3). We agree. On the other hand, Benicorp did not directly violate § 1182(a)(1). It afforded Werdehausen coverage consistent with HIPAA and then retroactively rescinded coverage because of material non-disclosures on the application. Thus, the Werdehausens have no ERISA claim based directly on a HIPAA violation. However, though the Werdehausens have no direct ERISA claim for a violation of HIPAA, as we have explained the congressional intent underlying HIPAA is relevant in determining whether Benicorp's policy of automatic rescission breached its fiduciary duty as an ERISA benefits decision-maker. In other words, like the unpreempted state insurance law in UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 377 (1999), HIPAA supplies a "relevant rule of decision" for the Werdehausens' claim to recover benefits and enforce the terms of the plan under 29 U.S.C. § 1132(a)(1)(B).

**MHCURA.** The Werdehausens' amended complaint included a state law claim that Benicorp violated MHCURA when it preauthorized Kenny Werdehausen's neck surgery and then refused to cover the surgery after it was performed. Mo. Rev. Stat. § 376.1361(13). The violation was pleaded both as an element of their ERISA claims and as a separate claim, but they did not invoke the judicial review remedy expressly authorized by state law. See Mo. Rev. Stat. § 376.1387(1). The district court dismissed this claim on the ground that Mo. Rev. Stat. § 376.1361(13) is preempted by ERISA. We disagree.

ERISA broadly preempts "State laws to the extent that those laws relate to any employee benefit plan" but expressly saves from preemption "any law of any State which regulates insurance." UNUM, 526 U.S. at 363, quoting from 29 U.S.C. §§ 1144(a), (b)(2)(A). In Kentucky Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003), the Supreme Court modified its prior standard for determining whether a state law "regulates insurance" within the meaning of the ERISA saving clause. Under the new standard, to avoid ERISA preemption a state law must (1) "be specifically directed toward entities engaged in insurance" and (2) "substantially affect the risk pooling arrangement between the insurer and the insured." 538 U.S. at 342. Benicorp concedes that § 376.1361(13) is specifically directed toward health insurers[2] but argues that it does not substantially affect the risk pooling arrangement.

In Miller, the Court ruled that a Kentucky statute substantially affected the risk pooling arrangement because it "alter[ed] the scope of permissible bargains between insurers and insureds in a manner similar to . . . the notice-prejudice rule we sustained in UNUM." 538 U.S. at 338-39. The California notice-prejudice rule in UNUM required insurers to pay untimely claims unless the insurer was prejudiced by the delay. 526 U.S. at 364. Like the California rule, Mo. Rev. Stat. § 376.1361(13) limits an insurer's contractual ability to deny claims. The California rule limited enforcement of a policy provision creating a time bar. The Missouri statute bars enforcement of a provision excluding coverage if the insurer preauthorized the medical procedure. Each increases the insurer's liability for health care services already provided. Each "dictates to the insurance company the conditions under which it must pay for the risk that it has assumed." Miller, 538 U.S. at 339 n.3.

_____

[2]The statute applies to a "health carrier," a term defined elsewhere to include entities such as hospitals that are not insurers. See Mo. Rev. Stat. § 276.1350.22. However, this type of overbreadth does not prevent § 376.1387.13 from being a state law regulating insurance within the meaning of the ERISA saving clause. See Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 372 (2002); Prudential Ins. Co. of America v. Nat'l Park Med. Ctr., Inc., 413 F.3d 897, 910-12 (8th Cir. 2005).

We conclude that the substance of § 376.1361(13) satisfies both components of the <u>Miller</u> standard and is therefore saved from ERISA preemption. Of course, any state law *remedy* is preempted by ERISA's comprehensive remedial scheme. <u>See</u> <u>Davila</u>, 542 U.S. at 209; <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 54 (1987). But again like the unpreempted notice-prejudice rule in <u>UNUM</u>, § 376.1361(13) supplies a relevant rule of decision in resolving the Wederhausens' ERISA claims under 29 U.S.C. § 1132(a)(1)(B). 526 U.S. at 376-77; <u>see also</u> <u>Rush Prudential</u>, 536 U.S. at 380. Not surprisingly, whether Benicorp or its agent preauthorized Werdehausen's neck surgery is a disputed issue of fact. It must be resolved in the district court on remand.

**Other Issues**. As we have reversed the grant of summary judgment dismissing the Werdehausens' ERISA claims under 29 U.S.C. § 1132(a)(1)(B), we need not address their arguments that the district court committed evidentiary and discovery errors in the summary judgment proceedings.

The judgment of the district court is reversed in part and the case is remanded for further proceedings not inconsistent with this opinion.

_____