# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2234

_____

St. Paul Fire & Marine Insurance Company,

*Plaintiff - Appellee*,

v.

Abhe & Svoboda, Inc.,

*Defendant - Appellant*.

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 11, 2015
Filed: August 20, 2015

_____

Before WOLLMAN, BEAM, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Following the sinking of a leased barge during a storm, industrial painting contractor, Abhe & Svoboda, Inc. ("Abhe"), filed a claim for insurance coverage. Abhe invoked a Protection and Indemnity insurance policy issued by maritime underwriters, St. Paul Fire and Marine Insurance Company ("St. Paul Fire"), as part of a package marine insurance policy. St. Paul Fire denied Abhe's claims and then

filed suit in the district court seeking a declaration that the policy was void under the doctrine of *uberrimae fidei*. That doctrine requires that parties to an insurance contract must accord each other the highest degree of good faith. Abhe filed several counterclaims, including a claim for negligence, and both parties moved for summary judgment.

The district court granted St. Paul Fire's motion for summary judgment, declaring the package policy void under the principle of *uberrimae fidei* because Abhe failed to disclose material facts in its application for insurance coverage. The court also dismissed Abhe's counterclaims with prejudice. Abhe appeals, arguing principally that the district court failed to consider the element of reliance in assessing St. Paul Fire's *uberrimae fidei* defense. We conclude that reliance is an element of the defense, and that there are disputed issues of fact as to whether it is satisfied, so we reverse and remand for further proceedings.

I.

Abhe is a Minnesota company that repairs and paints dams, bridges, and other infrastructure. In 2010, Abhe contracted with the Rhode Island Bridge and Turnpike Authority to paint and repair the Pell Bridge, a bridge that hangs over Narragansett Bay in Rhode Island. To assist in painting the bridge, Abhe leased two barges from Sterling Equipment, Inc. These barges were "dumb" barges, meaning that they had no motor or means of propulsion and were intended to serve solely as stationary equipment platforms. The parties refer to these barges as SEI-34 and SEI-120.

The leasing agreement with Sterling required Abhe to have a professional surveyor assess the barges "[t]o establish the condition of the Vessel[s] at the time of delivery and re-delivery." The survey report for SEI-34 noted that there were pinholes in the deck, the under-deck tanks were not watertight from one another, and there was mud, sand, and water in some tanks. The report did not note any holes in

-2-

SEI-34's hull and did not recommend any repairs. The survey also valued SEI-34 at $90,000, which reflected the value of the scrap metal, "plus a little bit more because the barge was still useful."

In March 2011, Abhe anchored the barges under the Pell Bridge and began painting. Over the next seven months, Abhe used SEI-34 as a stationary equipment platform. During this time, Abhe employees regularly inspected the barge, looked for holes, and fixed pinholes found in the deck. Abhe also installed a utility pump to remove any water that accumulated in SEI-34's bilge.

During the first three months of its work on the Pell Bridge project, Abhe was covered under its existing Marine Hull and Protection and Indemnity insurance policy. But instead of renewing its policy with its existing insurer, Abhe purchased a package marine insurance policy from St. Paul Fire. St. Paul Fire did not request that Abhe complete an application for insurance, but instead accepted the application that Abhe provided to its previous insurer in May 2010. The schedule of vessels attached to that application was outdated and did not include SEI-34 or the other vessels that Abhe leased for the Pell Bridge project. The 2010 application also indicated that none of the scheduled vessels was surveyed within the last two years because the survey of SEI-34 had yet to be performed at the time of the application.

On May 3, 2011, Abhe sent St. Paul Fire an updated schedule of vessels, which included SEI-34 as a leased barge with a value of $225,000, reflecting its agreed value on its charter application with Sterling. Abhe did not provide St. Paul Fire with the November 2010 survey of SEI-34, and St. Paul Fire did not attempt to survey any of Abhe's marine equipment, as it was entitled to do under the policy. St. Paul Fire issued Abhe a Marine Hull and Protection and Indemnity Policy effective July 1, 2011, through July 1, 2012.

On October 29, 2011, a severe nor'easter struck the Newport area. During that storm, SEI-34 sank to the bottom of Narragansett Bay and landed upside down, crushing most of the equipment that was welded to its deck. The Coast Guard intervened shortly thereafter and ordered Abhe to remove the wreck from the bay. If Abhe failed to do so within a specified period of time, the Coast Guard would federalize the wreck, which would empower the government to clear the wreck and hold Abhe liable for all associated costs.

Abhe contacted a marine salvage company, Donjon Marine Co., Inc., to negotiate the wreck removal. At St. Paul Fire's request, Abhe provided St. Paul Fire with SEI-34's survey and lease agreement, salvage plans, and a proposed wreck-removal contract from Donjon. Abhe then turned over negotiation of the Donjon contract to St. Paul Fire, and St. Paul Fire retained an attorney to negotiate the contract on Abhe's behalf.

After the wreck had been submerged for over five weeks, Donjon raised SEI-34's hull and all equipment that was still attached to the deck. Donjon then refused to recover the remaining barge equipment based on a provision in the wreck-removal contract that it negotiated with St. Paul Fire. Because the Coast Guard's deadline for federalizing the wreck was approaching, Abhe retained new companies to remove the remaining barge equipment for an additional cost.

During negotiations of the wreck-removal contract, St. Paul Fire agreed to guarantee fifty percent of the payments due Donjon and prepaid that amount. Donjon then pursued Abhe for the other half of the money. Abhe and Donjon proceeded to arbitration regarding Donjon's obligations to Abhe under the wreck-removal contract. Abhe sought defense and indemnification from St. Paul Fire for the arbitration, but St. Paul Fire refused, citing Abhe's non-disclosure of SEI-34's 2010 survey as a reason for the coverage denial.

The arbitrators concluded that Donjon breached its contract with Abhe by failing to raise all of the equipment, and the panel awarded Abhe $665,351.15 in compensatory damages, interest, and attorney's fees. The panel disallowed Abhe's claim for loss of the barge and other "overhead" items, including employee salaries, overtime, and damages not specifically tied to the recovery of the remaining equipment.

While the arbitration was pending, St. Paul Fire filed this action in the district court, seeking a declaratory judgment that it had no duty to defend or indemnify Abhe for several reasons. Abhe filed three counterclaims, including one alleging negligence by St. Paul Fire.

The district court granted St. Paul Fire's motion for summary judgment, concluding that the insurance policy was void *ab initio* because Abhe breached its duty of good faith under the doctrine of *uberrimae fidei* by failing to disclose the 2010 survey of SEI-34 on its application for insurance. The court thus denied Abhe's cross-motion for partial summary judgment as moot and dismissed Abhe's counterclaims with prejudice.

Abhe appeals, arguing that the district court applied the wrong legal standard in determining that it breached its duty of good faith. We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to Abhe and giving Abhe "the benefit of all reasonable inferences to be drawn from the evidence." *Country Life Ins. Co. v. Marks*, 592 F.3d 896, 898 (8th Cir. 2010).

II.

A.

This dispute concerns a marine insurance contract and therefore is governed by the principle of *uberrimae fidei*, or utmost good faith. *See N.Y. Marine & Gen. Ins. Co. v. Cont'l Cement Co.*, 761 F.3d 830, 839 (8th Cir. 2014). Under the doctrine of *uberrimae fidei*, "the parties to a marine insurance policy must accord each other the highest degree of good faith." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir. 1986). This duty of good faith requires the insured to "disclose to the insurer all known circumstances that materially affect the risk being insured." *Id.*; *see also Kilpatrick Marine Piling v. Fireman's Fund Ins. Co.*, 795 F.2d 940, 942 (11th Cir. 1986). Because the insured is in the best position to know of any facts that may be material to the risk, the insured is obligated to disclose those facts to the insurer, regardless of whether the insurer makes a specific inquiry. *See Knight*, 804 F.2d at 13.

The parties agree that Abhe was required to disclose all material facts to St. Paul Fire, but they dispute whether there is another element to an insurer's claim that a policy is void for non-disclosure. Abhe argues that an insurer cannot void a policy under the doctrine of *uberrimae fidei* without showing both that the insured failed to disclose a material fact *and* that the non-disclosure induced the insurer to issue the policy. The district court reasoned that St. Paul Fire was entitled to void the policy solely because a survey of a vessel's condition could "possibly influence the mind of a prudent and intelligent insurer"—*i.e.*, that the non-disclosure was material. Abhe asserts that the district court applied the wrong standard and that it failed to examine whether St. Paul Fire actually relied on the non-existence of SEI-34's survey when deciding whether to issue the policy to Abhe.

There is surprisingly little authority on whether a showing of reliance is required to void an insurance policy under the doctrine of *uberrimae fidei*. The principal case to address the question directly is *Puritan Insurance Co. v. Eagle Steamship Co. S.A.*, 779 F.2d 866 (2d Cir. 1985), which held that reliance is a necessary element of the *uberrimae fidei* defense:

> The principle of *uberrimae fidei* does not require the voiding of the contract unless the undisclosed facts were material *and relied upon*. A fact is not material unless it is something which would have controlled the underwriter's decision, and a marine insurance policy cannot be voided for misrepresentation where the alleged misrepresentation was not relied upon and did not in any way mislead the insurer.

*Id.* at 871 (emphasis added) (internal citation and quotation marks omitted).

St. Paul Fire argues that *Puritan* does not stand for the proposition that an insurer must *always* show reliance before invoking the *uberrimae fidei* defense. Instead, St. Paul Fire suggests that an insurer is required to show actual reliance only where the insurer had actual knowledge of the claimed non-disclosure and bound the risk anyway. According to St. Paul Fire, reliance should factor into a court's decision only where the underwriter bound the insurance with knowledge of the material information but did not rely upon it.

St. Paul Fire's contention is inconsistent with *Puritan*. The insured in that case failed to disclose two losses suffered by two of its vessels on its application for insurance. *Id.* at 868. The insurer was made aware of the first loss, but the second loss was not disclosed to the insurer until the next insurance renewal period. *Id.* at 869. Even though the insurer had no knowledge of the second loss, the Second Circuit upheld the district court's finding that while the insured should have disclosed the second loss to the insurers, the insurers "failed to prove that they would not have undertaken the risk had they been fully informed of this loss." *Id.* at 870. *Puritan*

thus requires that an insurer seeking to void a policy show reliance on an insured's non-disclosure, regardless of whether the insurer had knowledge of the undisclosed material fact at the time that it decided to issue the policy.

We find the Second Circuit's reasoning persuasive. In general contract law, a misrepresentation by omission has no legal effect "unless it induces action by the recipient, that is, unless [the recipient] manifests his assent to the contract in reliance on it." Restatement (Second) of Contracts § 164 cmt. c (1981). Before a party can rescind a contract due to the other party's non-disclosure or misrepresentation, he must show that the misrepresentation induced him to enter the contract. *Id.* In other words, a party is required to show a causal connection between the other party's omission and the issuing of the contract. *See* R. Lord, 27 Williston on Contracts § 69:32 (4th ed. 2014). We discern no reason why the requirement of causation should be removed in the context of marine insurance contracts.

St. Paul Fire's proposed rule also would create a moral hazard on the part of marine insurers. It would have the perverse effect of encouraging insurers to assume unreasonable risks and to issue insurance polices that they otherwise would not have issued. Under the rule proposed by St. Paul Fire, if an insurer knows that an applicant for insurance failed to disclose or misrepresented a fact that other prudent insurers may deem to be material, that insurer would have an incentive to issue the policy anyway, collect premiums from the insured, and then use the doctrine of *uberrimae fidei* to void the policy if an accident occurs and the insured seeks to invoke the policy's protection. Allowing an insurer to void a policy based on the *uberrimae fidei* defense in that situation would not further the purpose of the doctrine to protect the insurer against liability caused by an insured's failure to act in good faith.

We have required that insurers demonstrate actual reliance before voiding a policy based on the principle of *uberrimae fidei* in other circumstances. In *Shipley v. Arkansas Blue Cross & Blue Shield*, 333 F.3d 898 (8th Cir. 2003), we addressed

-8-

an insurer's effort to void an insurance policy, governed by ERISA, because of alleged material omissions in the insurance application. The court recognized that "[i]nsurance polices are traditionally contracts *uberrimae fidei*," and "[i]f a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party *upon which the recipient is justified in relying*, the contract is voidable by the recipient." *Id.* at 903 (emphasis added) (internal quotation marks omitted). We upheld the district court's grant of summary judgment in favor of the insurer, but only after determining that the insurer showed actual reliance on the insured's misrepresentations. *Id.* at 905-06.

Similarly, in *Countryside Casualty Co. v. Orr*, 523 F.2d 870 (8th Cir. 1975), we addressed an insurer's claim to have an automobile insurance policy declared void *ab initio* on the ground that the insured misrepresented his history of traffic violations, arrests, and convictions for public drunkenness on his application for insurance. *Id.* at 871-72. The district court granted summary judgment in favor of the insurer, reasoning that "the insurance company relied upon the misrepresentations and would not have issued the policy had it known the true facts that existed at the time." *Id.* at 875 (internal quotation marks omitted). In affirming the district court, we applied the common law rule that "a material misrepresentation made on an application for an insurance policy *and relied upon by the insurance company* will void the policy." *Id.* at 872 (emphasis added).

While most circuits have not explicitly recognized reliance as a distinct element of the *uberrimae fidei* defense, some courts have applied a subjective test for materiality that asks whether the insurer in fact would have found the omitted information to be material. The standard applied by these circuits effectively requires a showing of actual reliance by the insurer, because it defines a material fact as one that the insurer relied upon. *See, e.g.*, *I.T.N. Consolidators, Inc. v. N. Marine Underwriters Ltd.*, 464 F. App'x 788, 794 (11th Cir. 2012) ("Because all parties knew of the loss here, a misrepresentation that no known loss had occurred could not have

led [the insurer] to rely on that statement, and would in no way constitute a material misrepresentation in breach of *uberrimae fidei*."); *Certain Underwriters at Lloyd's, London v. Inlet Fisheries, Inc.*, 518 F.3d 645, 655 (9th Cir. 2008) ("[The insurer] produced overwhelming and unrefuted evidence that any of these undisclosed facts would have affected its decision to offer the policy were it known."). To satisfy the materiality element of the *uberrimae fidei* defense in these jurisdictions, insurers must show that they would not have issued the policy, or would have issued it at a different premium, if they had known about the omitted fact. Other decisions applying *uberrimae fidei* rely on evidence of actual reliance or inducement on the part of the insurer, even where they have not articulated reliance as a requirement distinct from materiality. *See, e.g.*, *Certain Underwriters at Lloyd's v. Montford*, 52 F.3d 219, 222 (9th Cir. 1995); *Gulfstream Cargo, Ltd. v. Reliance Ins. Co.*, 409 F.2d 974, 980 (5th Cir. 1969).

These decisions are consistent in substance with our conclusion, but we think clarity is enhanced by preserving actual reliance and objective materiality as distinct elements. In one of its earliest cases concerning a marine insurer's *uberrimae fidei* defense, the Supreme Court applied an objective test for materiality, concluding that "[h]ad [the undisclosed fact] been known, it is reasonable to believe that a prudent underwriter would not have accepted the proposal as made." *Sun Mut. Ins. Co. v. Ocean Ins. Co.*, 107 U.S. 485, 509-10 (1883); *see also AGF Marine Aviation & Transp. v. Cassin*, 544 F.3d 255, 264-65 (3d Cir. 2008); *Grande v. St. Paul Fire & Marine Ins. Co.*, 436 F.3d 277, 282-83 (1st Cir. 2006); *Kilpatrick,* 795 F.2d at 942-43. While materiality examines whether a fact would have influenced the judgment of a *reasonable and prudent* underwriter, *e.g.*, *Cont'l Cement Co.*, 761 F.3d at 841, reliance examines whether there was a causal connection between the misrepresentation or concealment of that material fact and the *actual* underwriter's decision to issue the policy. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 19-14 (5th ed. 2011).

B.

St. Paul Fire argues that even if reliance is an element of the defense, there is no genuine issue of fact for trial on whether it relied on Abhe's failure to disclose the 2010 survey. The insurer argues that its underwriter, Ed King, received, reviewed, and relied upon Abhe's insurance application before deciding to insure SEI-34. King also testified that the 2010 survey of SEI-34, which indicated a lack of watertight bulkheads and pinholes in the hull, would have been "very important in underwriting [the] risk." Abhe countered, however, with evidence that in June 2012, King renewed coverage for SEI-120, despite receiving an on-hire survey for that vessel that showed the vessel lacked watertight bulkheads. We conclude that this evidentiary dispute is sufficient to create a genuine issue of material fact as to whether St. Paul Fire relied on Abhe's failure to disclose SEI-34's lack of watertight bulkheads in issuing the insurance policy for that barge.

Alternatively, St. Paul Fire asserts that Abhe's over-valuation of SEI-34 in its insurance application was an additional breach of *uberrimae fidei* that independently entitles it to summary judgment. King testified that if Abhe had disclosed the fact that SEI-34 had a scrap value of $90,000, he would have questioned whether the barge "might be an unacceptable risk." Abhe, however, produced evidence that SEI-34's stated value of $225,000 accurately reflected the barge's value as expressed in Abhe's charter agreement with Sterling. Abhe's marine insurance expert also testified that, for insurance purposes, the appropriate value of a leased vessel is the value specified in the charter agreement. We therefore conclude that a genuine issue of material fact exists as to whether undisclosed information regarding SEI-34's value was material and actually induced St. Paul Fire to issue coverage to Abhe.

If the case proceeds to trial on the defense of *uberrimae fidei*, we also believe that the question of materiality should be submitted to a jury for resolution of disputed issues of fact. The district court concluded succinctly that Abhe's non-

-11-

disclosure of the 2010 survey was material because "a prudent insurer would want to know that bulkheads designed to protect a vessel from sinking would not operate as intended." Abhe presented evidence, however, that other recent surveys of SEI-34 stated that the barge was suitable for use as an equipment barge despite having non-watertight bulkheads. Abhe also presented testimony from its expert surveyor that a lack of watertight bulkheads and a need to pump water from the bilge is common and is not a concern on barges that are used as construction platforms. As we do not think it can be "universally affirmed" on this record that the existence of non-watertight bulkheads "must always be material to the risk," *McLanahan v. Universal Ins. Co.*, 26 U.S. 170, 189 (1828), there is a genuine dispute for trial on materiality as well.

*        *        *


For the foregoing reasons, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion.

_____